## SAREPTA HIX *versus* JOEL DRURY.

Tha jury, when inquired of in court, touching their verdict, are by their oath bound
to make true answers. — Thus their statement in court that they have not read a
paper which went to them by mistake, is sufficient evidence of the fact.

If a paper delivered to the jury by accident is not read by them, it furnishes no
ground for setting aside the verdict.

Where the defendant in an action of slander pleads in justification the truth of the
words spoken, without pleading the general issue, the case does not come within
*St.* 1826, *c.* 107, § 2; so that if he fails to establish his plea, malice is to be infer-
red, and evidence that he spoke the words believing them to be true, cannot be
received in mitigation of damages.

CASE for slanderous words charging the plaintiff with theft.
A justification was pleaded, without the general issue, and the
whole defence was placed on the ground that the plaintiff was
guilty of the theft of which the defendant had accused her.
His counsel however contended, that from the facts proved
which had a tendency to establish his plea, the jury ought to
be satisfied that the words were spoken under a belief that
they were true, and not maliciously ; but the Chief Justice
instructed the jury, that if the defendant's evidence failed to
prove the guilt of the plaintiff, malice was necessarily to be
inferred, and that the same facts could not be made use of in
mitigation of damages.

It appeared, after the jury had returned a verdict for the
plaintiff, that two depositions, which had not been read on
the trial, were put up with the other papers and delivered to
the jury, and were returned by them with their verdict.
It did not appear by whom these depositions were put up for
the jury. The irregularity was entirely accidental. The
question being put to the jury whether these depositions were
read by any of them, they retired to inquire of each other, and
on their return (one of them having gone home) the foreman
stated that none of the jury had any distinct recollection that
either of the depositions had been read by them, but they
recollected that part of one of them had been read in court.
On the next day some of the jury having suggested that the
answer of the foreman was not sufficiently explicit, the ques-
tion was again put to him, and he stated that the jury had
intended to answer, that they were satisfied that neither of the

depositions was read by them in their room. They were then asked if they all agreed in that answer, and they assented The depositions taken for the case amounted to a hundred, and some of them having been rejected, the number delivered to the jury, after being read in court, was seventy-one. Most of them were taken to impeach or support the credit of witnesses, or the character of the plaintiff, and the jury stated that they had read very few of them.

The defendant moved for a new trial.

*Oct. 4th*  *Bigelow* and *Brooks*, in support of the motion. The defendant is entitled on two grounds to a new trial : — 1. Because depositions containing material evidence, which were not used on the trial, were delivered to the jury by the plaintiff's counsel : — 2. Because the jury were misdirected in matter of law.

1. The first objection ought to prevail, whether the depositions were read by the jury or not. Co. Litt. 227 *b* ; Bac Abr. *Verdict, I.* In the case of *Hackley* v. *Hastie,* 3 Johns. R. 252, it does not appear how the jury got possession of the paper in question. If the jury could not have been influenced by the evidence, and the party in whose favor the verdict is found has not been in fault, perhaps there can be no just cause for setting aside the verdict. But where evidence touching the matter in issue, which was not used on the trial, has been delivered to the jury by the counsel of the party in whose favor the verdict is, this is a fault which his own testimony is insufficient to explain. It would be against the policy of the law that he should be permitted to testify that the irregularity was unintentional or accidental ; because, if he would intentionally commit such a fraud, he would not hesitate to exculpate himself, if he could do it, by his own testimony.

Besides, it does not appear, by proper evidence, that the jury did not read the depositions. It must be presumed that they did read them, unless the contrary is shown by legal evidence. This has not been done. The jury have answered, on being inquired of as to the fact, that they had no recollection of reading the depositions. But they have not testified upon oath. Being used as witnesses to prove a fact, they ought to testify under the same sanctions as other witnesses

Their oath to render a true verdict cannot, extend to their declarations as to the depositions ; because those declarations are no part of their verdict. If they have made false answers in this respect, they cannot be convicted of perjury.

2. The instructions of the judge to the jury were against law in this particular, that the defendant's plea of justification ought to aggravate the damages, and that any evidence tending to prove that the defendant had good reason to believe the words to be true when he spoke them and pleaded his justification, ought not to be considered by the jury in mitigation of damages, or in extenuation of his plea.

The evidence which the defendant offered in support of his plea sufficiently proves that he believed the words to be true, and that he had good reason so to believe. It would have been sufficient to establish the charge in a court of law, except for the evidence introduced by the plaintiff, but of which the defendant knew nothing before it was given. The plaintiff's evidence, however, did not contradict the testimony of the defendant's witnesses, but merely tended to create some doubt as to the credit due to their testimony. The plaintiff moreover was in fault. She took the opportunity of entering the defendant's house at a time when she knew the family were absent ; and she afterwards gave false and contradictory accounts of that transaction and of her subsequent conduct. The defendant therefore had reason to believe that what he had spoken was true, and he pleaded the truth in justification. That such a plea, under such circumstances, should aggravate the damages, seems to be highly unreasonable.

The effect of a plea of justification upon the damages was considered in the case of *Larned* v. *Buffinton*, 3 Mass. R. 546, and it is there laid down by Chief Justice *Parsons*, that if the defendant, through the fault of the plaintiff, have good reason to believe, as well at the time of speaking the words, as when he pleads his justification, that they are true, these circumstances ought to be taken into consideration by the jury in mitigation of damages.

In the subsequent case of *Alderman* v. *French*, 1 Pick. 1, the Court seem inclined to overrule what is there called a

Hix
v.
Drury.

dictum of Chief, Justice *Parsons ;* but the principle as stated by him, and that advanced by the Court in *Alderman* v. *French,* are entirely different.    In *Larned* v. *Buffinton,* Chief Justice *Parsons* supposes a case where the defendant believes the words to be true when he pleads his justification ; but in *Alderman* v. *French* a case is supposed, where the defendant believed the words to be true when he spoke them, but finds out his mistake before pleading.    In the former case, 't could not reasonably be expected that the defendant should waive a defence which he believes to be well founded ; or that he should admit his mistake before he finds out that he is mistaken.    And in the latter case, if the defendant will persist in the slander, by putting it on record, when he knows it is false, surely his belief that the words were true when he spoke them can furnish no excuse for his plea.

The legislature considered some of the doctrines advanced in *Alderman* v. *French* as of a novel character, and they un doubtedly intended, by *St.* 1826, *c.* 107, to abrogate them, and to place the action of slander on its former footing.    The 2d section of that statute provides, that when the defendant pleads the general issue, and also in justification that the words spoken were true, such plea in justification shall not be taken as evidence that he spoke the words, " nor shall such plea of justification, if the defendant fail to establish it, be of itself proof of the malice of such words, but the jury shall decide upon the whole case, whether such special plea was or was not made with malicious intent."

By this provision it was evidently intended, that pleading a justification should not aggravate the damages, unless it appear to have been done with a bad intent, and of this the jury are to judge upon the whole case.    It is true that the statute contemplates a case where the general issue is pleaded in connexion with a special justification ; but it is impossible to see how the general issue can affect the other plea.    The plea of justification cannot be the less malicious because the general issue is pleaded with it ; nor can it be any stronger evi dence of malice, or have a stronger tendency to injure the plaintiff, when pleaded alone.    If the defendant should plead the general issue, he would not be obliged to rely on it, but

he might waive it on the trial, as unnecessary to his defence. Why then should he be required to deny the speaking of the words, when he knows it can be proved against him, as the condition of his being permitted to show that he pleaded his other plea under an honest belief that it was well founded ? By what sophistry will it be attempted to be maintained, that the defendant is bound to declare, in the form of a plea, what he knows to be false, in order to enable him to extenuate his mistake, in stating in another plea what he sincerely believes to be true ? If the legislature in declaring what shall be the effect of a plea of justification in an action of slander, had in view the common case where the general issue is pleaded with such plea of justification, and to which case only a part of the provisions of the statute are applicable, it would not be right to impute to them the absurd consequences of confining all its provisions to such cases. Every statute ought to receive an interpretation according to its obvious meaning and purpose, and not according to its literal import, if that be absurd or insensible, or inconsistent with the spirit of the act.

It is further to be remarked, that by the rules of law as established by various judicial decisions, the defendant could not, under the general issue, have availed himself of any evidence tending to prove the truth of the words, even in mitigation of damages. See *Underwood* v. *Parks*, 2 Str. 1200 ; *Watson* v. *Christie*, 2 Bos. & Pul. 225, note ; *Shepard* v. *Merrill*, 13 Johns. R. 475 ; 1 Chitty on Pl. 487 ; 2 Stark. Ev. 877, 878. And this principle is recognised even in the case of *Alderman* v. *French*. Nor will any evidence, which tends to justify the words, be received in mitigation of damages only. If the defendant relies upon them for any purpose, he must plead them in justification, that the plaintiff may have notice. See the remarks in Starkie, and the case of *Dennis* v. *Pawling*, referred to in the note to *Watson* v. *Christie*.

It seems necessarily to follow, from the principles decided in the cases cited, that the general issue would have been entirely useless to the defendant, and that the evidence by which he claimed to have the damages mitigated, was proper

301

Hix
v.
Drury.

for the consideration of the jury under his plea of justification, and under that plea alone. In determining what ought to be the effect of such plea upon the damages, the true question is, whether it was pleaded considerately and from justifiable motives, or wantonly and maliciously. By this rule the defendant is willing to be judged.

*Merrick* and *Miles*, *contrà*, cited in regard to papers going to the jury by mistake, *Whitney* v. *Whitman*, 5 Mass. R. 405 ; *Hackley* v. *Hastie*, 3 Johns. R. 252 ; *Merritt* v. *Brinkerhoff*, 17 Johns. R. 323. They contended, that as the general issue was not pleaded with the justification, this case did not come within either the letter or the spirit of *St.* 1826, *c.* 107, § 2, and if so, that the direction to the jury was correct. *Larned* v. *Buffinton*, 3 Mass. R. 546 ; *Wolcott* v. *Hall*, 6 Mass. R. 514 ; *Alderman* v. *French*, 1 Pick. 1.

*Oct. 6th.*

*Per Curiam.* It appears that the two depositions went to the jury by accident. It likewise appears by the answers of eleven of the jurors, who were questioned in court, that the depositions were not read by them, and the remaining juror has made affidavit that they were not read by him, nor by any other juror in his presence. We think it is sufficiently proved

**302**

that they were not read, and that although the eleven jurors were not sworn to testify, yet that by their oath to give a true verdict they were as much bound to make true answers *in court touching their verdict*, as if they had been sworn specifically for that purpose.[1]

These papers then having gone to the jury by accident, and not having been read by them, the question is whether there shall be a new trial. We are all of opinion, that if a paper not in evidence is delivered to the jury by design, by the party in whose favor the verdict is returned, the verdict shall be set aside, even if the paper is immaterial and this as a proper punishment for the party's misconduct.[2]

---

[1] See *Pierce* v. *Woodward*, 6 Pick. 206 ; *Parrott* v. *Thatcher*, 9 Pick. 426 *Dorr* v. *Fenno*, 12 Pick. 526 ; *State* v. *Hascall*, 6 N. Hamp. R. 361 ; *Hackley* v. *Hastie*, 3 Johns. R. 252 ; *Taylor* v. *Greeley*, 3 Greenl. 204 ; *Haskell* v. *Becket*, id. 92.

[2] See *State* v. *Hascall*, 6 N. Hamp. R. 360 ; 1 Chitty on Crim. Law, (2d Amer. ed.) 633, 634, and notes ; *Rex* v. *Burdett*, 1 Ld. Raym. 148.

But that is not the present case. So where a paper which is capable of influencing the jury on the side of the prevailing party, goes to the jury by accident, and is read by them, the verdict will be set aside, although the jury may think that they were not influenced by such paper, for it is impossible for them to say what effect it may have had on their minds.[3] But where a paper which might influence the jury is not read, it is the same thing as if it had not been delivered to them. The verdict therefore is not liable to objection on th's ground.

In regard to the direction of the judge, the statute of 1826 was not adverted to at the trial, but the question stood on the common law ; and it is clear upon the authority of *Alderman* v. *French* and other cases which have been cited, that the jury should not have been instructed otherwise than they were. As to the statute, we think it doubtful whether it was intended to be applied to a case already pending ; we do not however decide on that ground ; for we are of opinion that the case before us does not come within the statute. The second section provides, that in an action for slander, wherever the defendant " may plead the general issue, and also in justification that the words spoken were true, such plea in justification shall not be held or taken as evidence that the defendant spoke such words. Nor shall *such plea of justification*, if the defendant fail to establish it, be of itself proof of the malice of such words, but the jury shall decide upon the whole case, whether such special plea was or was not made with malicious intent." This is a great departure from the common law of England and of this commonwealth.[1] There appears to have been a change in public sentiment in regard to actions of slander ; but we are not to go further than the legislature have gone. We are to determine what they have enacted as law. In the passage above recited, *such plea of justification* evidently means a special plea which is pleaded together with the general issue. The statute was made

<div style="margin-left:auto; text-align:right;">Hix<br>*v.*<br>Drury.</div>

303

---

[3] See *Benson* v. *Fish*, 6 Greenl. 141.

[1] But see Gould on Pl. 432, 433; *Cilley* v. *Jenness* 2 N. Hamp. R. 89; *Whitaker* v. *Freeman*, 1 Devereux, 280 ; *Jackson* v. *Stetson*, 15 Mass. R. Rand's ed.) 52, n. (*a*), 53, n. (*a*). See *Wilson* v. *Nations*, 5 Yerger, 211.

undoubtedly with reference to the decision of this Court, in a case where the two pleas were pleaded together; as is manifest from the words in the first part of the second section; and to say that the provision was intended for a case where there is no general issue, but only a plea in justification, would be to apply it to a case clearly not embraced by the statute.[2]

*Judgment according to verdict*

---

[2] This subject has again been reviewed by the legislature, and it has been enacted, that " if the defendant in any action for slander or for publishing a libel, shall plead in his justification, that the words spoken or published were true, such plea, though not maintained by the evidence, shall not in any case be of itself proof of the malice alleged in the declaration." Revised Stat. *c.* 100, § 19. A still later statute has abolished special pleading entirely, and all matters in defence may now be given in evidence under the general issue See *St.* 1836, *c.* 273.