## CHARLES HUTCHINSON ADS. THE CONSUMERS COAL CO.

1.  Affidavits of jurors are admissible in their own exculpation, and to sustain the verdict; but when offered for the purpose of contradicting or destroying the verdict, they have been regarded always by this court as against the policy of the law, and on that ground have been invariably rejected.

2.  Applications to set aside verdicts for the misbehavior of jurors are addressed to the sound legal discretion of the court, and cannot ordinarily be brought to the test of any fixed and definite rule. Each application must be determined mainly upon its own peculiar facts and circumstances, and should be granted or refused with a view, not so much to the attainment of exact justice in the particular case, as to the ultimate effect of the decision upon the administration of justice in general.

3. Where both parties are innocent, a tainted verdict will, in general, be set aside without hesitation, on the application of either party. But this will not be done on the application of one who has attempted, directly or indirectly, to influence the jury by improper means, or who has encouraged, of prompted, or knowingly permitted such an attempt, or who rests under any just suspicion of having done so.

4. The facts in this case, pointing suspiciously to a corrupt arrangement between a friend of the defendant and one of the jurors, but nothing appearing to cast suspicion on the defendant—*Held*, that on his application, the verdict should be set aside.

On rule to show cause.

Argued at June Term, 1872, before BEASLEY, Chief Justice, and Justices BEDLE, WOODHULL and SCUDDER.

For the rule, *C. S. Titsworth* and *Mr. Payne*, of Pa.

Contra, *C. Parker* and *T. Runyon*.

The opinion of the court was delivered by.

WOODHULL, J. So far as the depositions of the four jurors relate to what took place in the jury room after the jury had retired to consider of their verdict, and so far as they are intended to show or to explain the reasons, or the motives of the jurors, or any of them, for giving or consenting to the verdict, they cannot be received as evidence to support this application. It has been held by this court (*Kennedy* v. *Kennedy*, 3 *Harr.* 451,) that the affidavits of jurors are admissible in their own exculpation, and to sustain the verdict; but when offered for the purpose of contradicting or destroying the verdict, they have been regarded always by this court as against the policy of the law, and on that ground have been invariably rejected. *Brewster* v. *Thompson*, *Coxe* 32; *Randall* v. *Grover*, *Ib.* 151; *Schenck* v. *Stevenson*, 1 *Penn.* 387; *Den* v. *McAllister*, 2 *Halst.* 46; *Clark* v. *Read*, 2 *South.* 486; *Deacon* v. *Shreve*, 2 *Zab.* 176.

And although there are many cases to the contrary, the great weight of authority in this country and in England, appears to support the doctrine that the testimony of jurors, to

impeach their own verdict, should be excluded, on grounds of public policy; because it tends to defeat their solemn act, where third persons are interested; because its admission would open a door to tamper with jurymen, after they had given their verdict; because it might be the means in the hands of a dissatisfied juror to destroy a verdict at any time after he had assented to it; and because of its tendency to unsettle verdicts in general. *Willing* v. *Swasey*, 1 *Browne* 123; *Owen* v. *Warburton*, 1 *N. R.* 326; *Hilliard on New Trials*, ch. 10, § 63; 1 *Gr. & Wat. on N. T.*, 111–115, and cases cited.

Throwing out of the account such parts of the depositions read on the argument as fall within the operation of the rule just stated, we have remaining, as the basis of the present application, the single ground of the misbehavior of the juror McLaughlin during the progress of the trial, and before the jury retired to consider of their verdict.

Applications of this character being always addressed to the sound legal discretion of the court, cannot ordinarily be brought to the test of any fixed and definite rule. Each application must be determined mainly upon its own peculiar facts and circumstances, and should be granted or refused with a view, not so much to the attainment of exact justice in the particular case, as to the ultimate effect of the decision upon the administration of justice in general.

This last consideration will be found to have exerted, very generally, a controlling influence in determining the action of courts with reference to tainted verdicts.

The facts in regard to the conduct of the juror McLaughlin, which are either undisputed or clearly established by the testimony, appear to be these: one day, during the progress of the trial, he pointed out Robert Love to the foreman of the jury, saying, " I believe that little curly-headed fellow is worth a million of dollars." On the Saturday week before the verdict was rendered, he was heard by the foreman to inquire where he could raise $500, saying that he must get it. The same Saturday he went with one Kernan, a relative of

McLaughlin's wife, and a stranger to both of the parties to this suit, to the lodging place of Robert Love, to whom he was there introduced by Kernan, and with whom he had shortly afterwards a private interview of some twenty minutes, during which this case, the probable result of the trial, and the influences by which that result might be affected, formed the chief topic of conversation. Before separating on that occasion, McLaughlin gave Love his address, with an invitation to over to and see him the following Monday. On the day last named, they met again in the neighborhood of the court-house, and the Thursday following they were observed conversing together in very low tones, both of them appearing to be much confused when the witness, an acquaintance of McLaughlin's, asked him in a jocular way, the *price* of *coal*. The same day they were drinking together at different saloons, treating each other, and having some further talk about the case—this, it must be remembered, was Thursday, February 22d. The day before that, February 21st, and again February 23d, McLaughlin informed the court that he had been corruptly approached by Love, who had endeavored to persuade him to use his influence with the other jurors to procure a light verdict against the defendant. The same information, in substance, was communicated to a fellow juror in the case, either on the 21st or the 23d of February, McLaughlin telling him that he was going before the judge to make an affidavit. The greater part of these facts appear substantially in the statements of both McLaughlin and Love. The differences between them seem to result mainly from an attempt on the part of each to exculpate himself, and throw the blame over on the other. Neither is willing to acknowledge Kernan as his agent, nor will either admit that he made the first advance to the other. It can hardly be regarded, however, as of much importance for the purposes of this application, which one of these two men has incurred the greater guilt, which of them was the tempter, and which the tempted.

The theory of the defendant's case, as presented by his

counsel, and sustained by the testimony of Love, is, that the corrupt proposition originated with the juror, and was rejected without being even communicated to the defendant; that the disappointed juror, baffled in his fraudulent attempt to sell himself to the defendant, forthwith turned accuser, representing to his fellow-jurors that corrupt advances had been made to him, and money actually offered, in behalf of the defendant; and that so gross an impeachment of the integrity of the defendant, could not, and in fact did not, fail to damage his case in the estimation of the jury, the result being a much larger verdict against him than would otherwise have been rendered.

McLaughlin, on the other hand, wholly repudiates this version of the transaction, representing that on Saturday, February 17th, on his way home from court, he was overhauled by Kernan, and asked to go to New York on some business, Kernan declining to tell him what the business was; that he accompanied Kernan accordingly to the Merchants Hotel, and shortly after arriving there, was by him introduced to Mr. Love, who invited him up stairs to a private room, inquired whether he was a juror in this case, what the prospect was, what influence he had with the jury, and what could be done to procure a light verdict against the defendant.

Without undertaking to decide upon the credibility of these witnesses, or to determine the relative truthfulness of their conflicting statements, we do not hesitate to say, that neither McLaughlin nor Love has succeeded in giving any satisfactory explanation of his conduct in connection with this case; and that the facts admitted or proved, point most suspiciously to a corrupt proposition made by one of them— no matter which one—and entertained or encouraged by the other. It cannot make much difference, whether the juror was offering to sell himself, or was only willing to be bought. In either case he was not fit to be a juror.

It is not possible to feel any degree of confidence in the fairness of a verdict, which the vote and influence of such a juror have helped to make. A verdict, so tainted with sus-

picion, is seldom, if ever, allowed to stand, unless the party seeking to set it aside is, himself, in some way responsible for the taint of which he complains.

Where both parties are innocent, a tainted verdict will, in general, be set aside without hesitation, on the application of either party.

But the same principles of public policy, which require us to set aside the verdict in such a case, imperatively forbid our doing it on the application of one who has attempted, directly or indirectly, to influence the jury by improper means, or who has encouraged or prompted, or knowingly permitted such an attempt, or even rests under any just suspicion of having done so.

After a very careful examination of all the facts which appear in this case—an examination all the more careful on account of the relations existing between the defendant and Mr. Love—we find no just ground for holding the defendant responsible for the conduct of Mr. Love towards the juror, McLaughlin.

Rule to show cause made absolute.