## WRIGHT *v.* CLARK.

*Tort.　Acts of* 1862, *No.* 10, *s.* 3.　*Exemplary Damages.
Jury.　Motion to set aside Verdict.*

In trespass for shooting a dog, it appeared that the dog was a hound, kept for the chase, and chained when not in pursuit of game ; that when shot he, followed by his master, the plaintiff, and by S., who had joined in the chase in accordance with a previous understanding between him and plaintiff, was in pursuit of a fox which he had just driven to cover, and about which he was playing, out of sight and hearing of his master, but near S.　*Held,* that the dog when shot was not *running at large* within the meaning of s. 3, No. 10, Acts of 1862.

Defendant testified that he shot at the fox, but accidentally hit the dog.　*Held,* that as his shooting was voluntary, he was answerable for the consequences.

The court charged that the jury might give exemplary damages, if they found that defendant shot the dog "intentionally and wantonly."　*Held,* that as malice is implied in law from the intentional commission of a trespass, there was no error.

The jury, while considering of their verdict, were furnished a copy of a dictionary by the officer, at their request, from which they took the word *wanton,* used by them in their special finding on the subject of exemplary damages.　*Held,* no cause for setting aside the verdict.

TRESPASS for shooting a dog, appealed from the judgment of a justice of the peace.　Plea, the general issue, with notice of special matter, and special pleas.　Trial by jury, February Term, 1877, REDFIELD, J., presiding.

It appeared that the dog in question was a hound kept for the chase, and chained when not in pursuit of game ; that on November 21, 1874, plaintiff went out with the dog to hunt foxes ; that the dog soon started a fox, and after pursuing him several miles in various directions, passed the house of one Stone, who lived about two miles from plaintiff's ; that Stone, with whom plaintiff had an understanding that if the dog pursued game in his vicinity he should join in the chase, being then out, started in pursuit ; that the fox, closely followed by the dog, passed across the farm of the defendant's father, and took cover in a piece of wood, Stone, and others who had joined him, being near by and in view of both fox and dog as they passed into the wood and out of sight ; that Stone and the others saw the defendant come from his father's house with a gun, and go in the direction taken by the

dog ; that Stone heard the dog howl as though obstructed or distressed, and ran forward ; that he soon heard the report of a gun, and on coming up, found the dog with a severe gunshot wound in the shoulder, the wound indicating ·by scorched hair, and by the presence of the wad in the wound, that the gun was discharged in near proximity to the dog. The plaintiff was not in the vicinity when the dog was shot. It was conceded that the dog had on no collar, nor anything to indicate its owner or keeper.

The defendant testified that at the time he shot the dog, the dog had driven the fox into cover, and was playing about him in full view ; and that he shot at the fox and hit the dog accidentally.

The defendant claimed that under s. 3, No. 10, Acts of 1862, the shooting of the dog was lawful. The plaintiff insisted that said statute was unconstitutional ; but the court ruled otherwise ; to which the plaintiff excepted.

The court charged that if the plaintiff or Stone was pursuing, and near enough to be in view, and the dog was neither doing nor threatening injury to others, he was not justified in shooting him ; that if the dog had the fox confined, the defendant was not to be justified in interfering with either dog or fox, so that if the defendant shot the dog accidentally, he would be liable for the actual damage, or if he did it intentionally or wantonly, the jury would be at liberty to give exemplary damages ; and that if they found the shooting wanton or intentional, they should find that fact specially. Exceptions by defendant. The jury returned a verdict for $13.60, and a special verdict, "that the shooting of the dog was a wanton act." The defendant moved to set aside the verdict, and it thereupon appeared that after the jury retired to consider of their verdict, they expressed their opinion that the act of the defendant was unintentional, but somewhat careless ; that a discussion then arose as to the proper word to express that idea in their verdict, and as they were unable to agree, the officer in charge, by their direction, brought them a copy of Webster's Unabridged Dictionary, which they consulted in making up their verdict, and from which they took the word *wanton*, used in their verdict. The court overruled the motion ; to which the defendant excepted.

It appeared that no guardian *ad litem* was appointed for defendant until the second term after the case was appealed. The defendant insisted that no costs prior to the appointment of such guardian could be allowed, but the court ruled otherwise; to which the defendant excepted.

*L. H. Thompson*, for the defendant.

The dog was so far from the presence of the plaintiff, that the plaintiff could not have restrained him had he been engaged in any mischief. He was therefore *running at large* within the meaning of the statute. Acts of 1862, No. 10, s. 3; *Russell* v. *Cone*, 46 Vt. 604, per PECK, J.; *Commonwealth* v. *Dow*, 10 Met. 382. The charge upon this point was, therefore, erroneous. *Clark* v. *Boardman*, 42 Vt. 677.

The plaintiff acquired no property in the fox by the dog's driving him to cover. 2 Greenl. Ev. s. 620; 1 Bouv. Law Dict. tit. *Feræ Naturæ;* *Pierson* v. *Post*, 3 Caines (N. Y.) 175; 4 Bac. Abr., Bouv. ed., tit. *Game.* The charge so far as it related thereto was therefore erroneous. *Vincent* v. *Stinehour*, 7 Vt. 62.

Exemplary damages are allowable only where the defendant has been guilty of malice, gross negligence, &c. Sedgw. Dam. 34, 517, 540. The charge as to the act being intentional or wanton, was, therefore, erroneous.

The motion to set aside the verdict should have been sustained. Hilliard New Trials, 219; *Merrill* v. *Nary*, 10 Allen, 416; *State* v. *Patterson*, 45 Vt. 317.

The plaintiff is not entitled to costs pending the appointment of guardian *ad litem*.

*W. W. Miles* and *W. W. Grout*, for the plaintiff.

The appointment of a guardian *ad litem* is sufficient if it precedes the trial. *Barber* v. *Graves*, 18 Vt. 290, and case cited. But it does not here appear that the defendant was an infant. *Russell* v. *Fillmore*, 15 Vt. 130; *Poultney* v. *Glover*, 23 Vt. 328; *Bradley* v. *Pratt*, 23 Vt. 378; *Bartlett* v. *Wood*, 32 Vt. 372.

The dog was not running at large within the meaning of the statute, but was, constructively, under the control of the owner

or keeper, who was following in the chase.   Besides it does not appear that the shooting was off the plaintiff's premises.   Acts of 1862, No. 10, s. 3.

The special verdict settles the fact that the shooting was wanton. There was, therefore, no error in what the court said about accidental shooting.   The special verdict, if herein rightly construed, makes error upon that point impossible.

The fox, while so confined by the dog, was in the constructive power and control of the plaintiff, and his special property, and any interference with either the dog or the fox was unlawful. Hence the defendant cannot say in defence that the shooting was accidental.   2 Kent. Com. 349 ; *Lindsay* v. *Lindsay*, 11 Vt. 261.

The motion to set aside the verdict was properly overruled. While the jury must receive the law from the court, they may learn, even in the jury-room, to make a proper use of language. *Wheatly* v. *Waldo*, 36 Vt. 237.

The act relied upon by the defendant is unconstitutional in that it authorizes the destruction of private property without due process of law or compensation.   Const. U. S., amendments, articles V, VI ; *Thorpe* v. *R. & B. Railroad Co.* 27 Vt. 140 ; *State* v. *Prescott*, 27 Vt. 194 ; Story Const. s. 1954.

The opinion of the court was delivered by

Ross, J.   On the trial the defendant attempted to justify the killing of the plaintiff's dog by virtue of s. 3, p. 527, Gen. Sts., which makes it the duty of the owner or keeper of a dog to cause a collar, with his name plainly written thereon, to be worn on the neck of the dog, and then provides : " And it shall be lawful for any person to kill any dog running at large off the premises of the owner or keeper, not having on such collar ; and the owner or keeper of such dog shall recover no damage for such killing." The plaintiff's dog was a hound, trained to hunt foxes, and kept chained except when taken out for that purpose.   On the occasion when shot, the plaintiff was out with the dog in pursuit of a fox, and although at the time of the shooting the plaintiff was some distance from the dog, he was still in the chase, and Stone, who had joined in the pursuit in accordance with a previous un-

derstanding with the plaintiff, was near to and in full view of the dog and the fox as they passed into the woods, where the defendant shot the dog. · It is not stated whether the place where the defendant shot the dog was off the plaintiff's premises, which is a fact necessary to be shown by the defendant, to make out a justification of the killing. As it is incumbent for the excepting party to place upon the record such facts as will affirmatively show error in the ruling of the County Court, the judgment of that court might be affirmed on this ground alone. It is however probably fair to infer from what is stated in the exceptions, that the killing was off the plaintiff's premises. Hence the question arises, whether the dog was " running at large " when killed. If not, the County Court correctly refused to direct a verdict for the defendant, and ruled that the defendant was not justified in shooting the dog, " if the plaintiff or Stone was pursuing the fox, and so near as to be in view." What the court added in regard to " the dog neither doing nor threatening any injury to others," could not have prejudiced the defendant. The meaning of the phrase, " running at large," was before the court on another statute, in *Russell* v. *Cone*, 46 Vt. 600. Judge PECK in that case says : " Running at large is used in the statute in the sense of strolling without restraint or confinement, or wandering, roving, or rambling at will, unrestrained. Perhaps no precise abstract rule under the statute can be laid down, applicable to every case, as to the nature, character, and amount of restraint necessary to be exercised over a domestic animal. * * * But the restraint need not be entirely physical ; it may depend much upon the training, habits, and instincts of the animal in the particular case ; and the sufficiency of the restraint is to be determined more from its effect upon, and controlling and restraining influence over, the animal, than from the nature or kind." This is so recent and so full a definition of these words that nothing further need be added. The dog is the most tractable of animals, and yields most readily to restraint other than physical. The voice and look of his master are often more potent to restrain him than cord or chain. He is often trained so that at his master's command he will remain by and guard his property for a whole day in the ab-

sence of his master, or go out of sight and miles away and gather in his flocks and herds. Different species have special instincts which render them particularly susceptible to training and restraint in certain directions. The trained hound, when pursuing the fox or deer with and at his master's bidding, is no more " strolling without restraint," or " wandering, roving, or rambling at will," than a boy while going on an errand at his master's command. Either, when out of sight and hearing of the master, have it in their power to " stroll without restraint," or rove at will ; but neither do, so long as they continuously and rigorously pursue the thing commanded. Hence the fact that the dog when shot was out of sight and hearing of his master, is not determinative of whether he was " running at large." If the plaintiff's testimony gained credit, when shot, the dog was in hot pursuit of the fox in obedience to the command of the plaintiff, with all his instincts urging him thereto, as each bound brought him nearer and nearer the coveted prize. We do not think such a dog, thus running, is, within the meaning of the statute, running at large ; and there was no error in this ruling of the County Court.

II. The defendant claimed that the shooting of the dog was accidental, occasioned by attempting to shoot the fox, as he had a right to do. If the kind of accidental shooting shown by the defendant was such as rendered him liable, the ruling of the court that he had no right to shoot at the fox if the dog had brought him under cover, whether correct or erroneous, becomes immaterial. It is only injuries from unavoidable accidents that are not actionable. In the case cited and relied upon by the defendant on this point, *Vincent* v. *Stinehour*, 7 Vt. 62, it is held : " Therefore, when a person is doing a voluntary act which he is under no obligation to do, he is held answerable for any injury which may happen to another either by carelessness or accident. On this principle the case of *Underwood* v. *Hewson*, 1 Stra. 596, was decided. The act of uncocking the gun was voluntary, not unavoidable ; a greater degree of prudence was therefore required." The shooting of the fox was voluntary, not unavoidable, and furnishes no

excuse to the defendant, if he did not thereby intend to hit and kill the dog.

III. We think there was no error in the court's charge in regard to exemplary damages. The court told the jury they were at liberty to add this class of damages if they found the defendant " intentionally and wantonly "—that is, purposely and recklessly, or without proper regard for the rights of the plaintiff—shot the dog. The law implies *malice* where a party purposely commits a trespass, especially if he commits the tort with a total disregard of the rights of the owner.

IV. There is no analogy between the jurors' obtaining a dictionary to ascertain the meaning of the language which they use in a special verdict, and the giving them the General Statutes by direction of the court, to hunt out for themselves the law relating to manslaughter. The jurors are to receive the law from the court in criminal cases even. It is the duty and prerogative of the court to explain to the jury the law on any subject brought before them for determination. If the court fail to suitably discharge this duty, it may be error. But the court is under no such duty, uncalled upon, to explain the meaning of ordinary words ; neither is it necessarily error for the jury to inform themselves of the meaning of such words from the dictionary, when they have occasion to use them in writing special verdicts. It is not apparent that the defendant was prejudiced thereby, and therefore it furnishes no ground for the reversal of the judgment of the County Court on exceptions. For aught that appears the County Court exercised a wise discretion in overruling the defendant's motion to set aside the verdict and for a new trial. This court will not reverse the judgment of the County Court when denying a motion resting largely in discretion, unless the exceptions render it clear that in its action that court has been governed by erroneous views of the law relating thereto, to the legal prejudice of the excepting party.

Judgment affirmed.