CAPE MAY COUNTY CIRCUIT COURT.

IN THE MATTER OF THE APPEAL FROM PROBATE OF ALLEGED WILL OF BEULAH MATTER COLLINS, DECEASED.

Decided July 10, 1940.

For the rule, *T. Millet Hand.*

*Contra, J. Victor D'Aloia.*

JAYNE, C. C. J. The propriety of a decree of the surrogate admitting to probate a paper-writing purporting to be the last will of Beulah Matter Collins was challenged on appeal in the Orphans Court. The Orphans Court certified certain factual questions to this court for determination by a jury. *R. S.* 3:2-31.

Specifically stated, the issues of fact thus submitted were: (1) Whether the paper presented for probate, purporting to be the last will and testament of Beulah Matter Collins,

deceased, was signed, witnessed, published and declared by her according to the statute in such case made and provided; (2) whether the said Beulah Matter Collins was at the time of making and declaring said alleged will possessed of testamentary capacity and capable of disposing of her estate; and (3) whether Edgar Fetherston, the executor named in said alleged will, unduly and fraudulently induced and influenced said Beulah Matter Collins to sign and execute the alleged will.

A relatively large volume of testimony was introduced at a trial occupying four days and the jury concluded that the writing was executed, published, declared and attested in conformity with our statutory requirements; that Mrs. Collins at the time of the making of the will possessed the legally required mental capacity to make a valid will. The jury, however, resolved that undue influence had been practiced by Mr. Fetherston upon Mrs. Collins which induced her to make the will.

The proponent of the will now has a rule to show cause why the verdict should not be annulled and a new trial of the issues allowed. The power of this court to nullify the verdict in such cases is indubitable. *R. S.* 3:2-33.

The most cogent reason among those assigned for a new trial relates to an impropriety in the deliberations of the jury. The depositions of Ralph Norton, the constable in charge of the jury, Miss Dorothea Wein, employed in the office of the county superintendent of schools, and H. Moffat Roorbach, the deputy county clerk who received the verdict, were taken. These persons were not members of the jury and their depositions are assuredly competent evidence in determining the basic facts in support of the present ground for a new trial. *Duffy* v. *McKenna,* 82 *N. J. L.* 62; *Queen* v. *Jennings,* 93 *Id.* 353, 358.

Concisely stated, these depositions reveal that at nine o'clock in the evening during the deliberations of the jury, one of that body informed the constable in attendance that the jury desired a dictionary to ascertain the meaning of the two words "undue influence." A member of the jury stated to the constable that there appeared to be a light in the office

of the county superintendent of schools and that he could doubtless obtain a dictionary at that office. The constable, without consultation with the court or any other official of the court, procured from Miss Wein at the office of the county superintendent a copy of "The Winston Simplified Dictionary" and delivered it to the jury. The jury returned to the court room to announce their verdict at ten-fifteen o'clock in the evening and the dictionary was then handed to the deputy county clerk.

Obviously the act of the constable was stupid and unjustifiable. The dictionary was incompetent evidence and if offered in evidence at the trial to aid the jury, it would have been excluded. Here no use of the dictionary could be proper. Where an inadmissible writing, book or article improperly reaches the jury during their deliberations, the primary inquiry is whether such extraneous object was of a character likely to prejudice, influence or mislead the jurors in their deliberations. Compare *Rorer* v. *Rorer,* 48 *N. J. L.* 50; *Nordsick* v. *Baxter,* 64 *Id.* 530. Assuredly, the use of a simplified English dictionary to explicate established principles of law as expressed in language approved by our courts is beyond the avowed scope of such a work and in such use, misguidance is more than probable.

Reported decision relating to the unauthorized use of a dictionary by a jury are presumably scarce. The following can be cited: *Daniels* v. *Barker* (*N. H.*), 200 *Atl. Rep.* 410; *Long* v. *Payne,* 198 *App. Div.* 667; 190 *N. Y. S.* 803; *Wright* v. *Clark,* 50 *Vt.* 130; 28 *Am. Rep.* 496; *Corpus Christi Co.* v. *Kjellberg* (*Tex. Civ. App.*), 185 *S. W. Rep.* 430; *Lightburne* v. *Bank* (*Tex. Civ. App.*), 232 *S. W. Rep.* 343.

Ordinarily, whether an inappropriate dictionary definition was productive of an idea or course of reasoning which materially contributed to the conclusion of the juror, is a problem too delicate to be safely made the basis of judicial inquiry.

It is the duty of the trial judge to expound the law to the jury and to afford the attorneys of the litigants an opportunity to hear the instructions and to register exceptions to any instructions considered to be erroneous. It is the duty

of the jury to accept the law of the case as expressed in the language chosen by the court.

It is not inapt to quote excerpts from the charge given in the present case to the jury pertinent to the subject of undue influence. The transcript of the stenographically reported charge discloses that the trial judge stated: "There remains to be considered the third question of fact presented to you for decision: Was fraud and undue influence exerted by Mr. Fetherston which induced Mrs. Collins to make this will? In alleging that this paper was the product of undue influence exerted upon Mrs. Collins by Mr. Fetherston the appellant has, of course, the burden of proving it. Concisely stated, undue influence, says the law, is such influence as dominates the will of the testatrix and produces a testamentary disposition which the testatrix would not have made if she had not been coerced by such influence. It must be influence of such a character as to destroy the free agency of the testatrix and amount to a moral or physical coercion. * * * There must be a control, in other words, over the mind of the testatrix or an importunity, to employ the word used in this request, practiced which she could not resist and to which she yielded. * * * As I said before, undue influence is that influence which amounts to moral or physical coercion inducing the testatrix to subordinate her own intentions, and inducing her to do that which she would not have otherwise done in the distribution of her property. * * * It must, however, be made to appear from the circumstantial evidence by justifiable and fair inferences from those established circumstances that such influence was, in fact, exerted and that it dominated and controlled the will of the testatrix and coerced her to make a testamentary disposition of her property which she otherwise would not have made."

The charge to the jury, embracing statements of the law relating to the three subjects, of formal execution of a will, testamentary capacity and undue influence, was necessarily somewhat lengthy. Evidently the jurors or some of them had a somewhat nebulous recollection of the instructions concerning undue influence. This circumstance is in itself significant in considering the allowance of a new trial. To

justly decide the particular issues of this case, a reasonably clear comprehension of the pertinent rules of law was indispensable. The manifest need of a dictionary seems to refute the assumption that this jury understood and remembered the instructions relating to undue influence.

Depositions of the members of the jury are presented on behalf of the appellant in the effort to protect the verdict. Such depositions may be employed to enable jurors to exculpate themselves from a charge of misconduct. *Kennedy* v. *Kennedy,* 18 *N. J. L.* 450; *Hutchinson* ads. *Consumers' Coal Co.,* 36 *Id.* 24. Undoubtedly the affidavits of the jurors would be competent to prove that a dictionary was not requested, received or used by them. The use of depositions of jurors to elicit from them the course of reasoning pursued and the factors and premises upon which they based their ultimate conclusion, has never been sanctioned on an application for a new trial. Just as public policy has forbidden the use of depositions of jurors for the purpose of impugning or destroying the verdict, so likewise has it prohibited the reception of such depositions to prove the ground of the verdict. *Lindauer* v. *Teeter,* 41 *N. J. L.* 255; *Peters* v. *Fogarty,* 55 *Id.* 386; *Queen* v. *Jennings,* 93 *Id.* 353; *Bragg* v. *King,* 104 *Id.* 4; *Marconi* v. *MacElliott,* 8 *N. J. Mis. R.* 69. The object here is to prove by the jurors themselves that they were not influenced by the use of the dictionary. An erroneous charge, for example, is not rendered harmless merely because the jurors swear that they did not listen to it. Justice can not be administered on any such fortuitous basis. However, the jurors acknowledge that some were dubious of the meaning of the word "unduly;" that the dictionary was in fact obtained and was consulted by some of them. They assert that the word "unduly" was not in the dictionary. The dictionary used by the jury is at hand and the adverb "unduly" appears under the word "undue." Many of the definitions of the word "undue" are too broad and inappropriate to be applied to the evidence in this case.

The power to grant a new trial is essentially remedial in character. In the present case the issue relating to undue influence was exceedingly controversial. In all the circum-

stances it would seem that the evidence on this branch of the case was not considered with an adequate understanding of the pertinent rules of law. Moreover, the power to vitiate a verdict is not only exercised with a view to the prevention of injustice in the particular case but also with a view to the ultimate effect of the decision upon the administration of justice in general. *Hulchinson* ads. *Consumers' Coal Co., supra.* The unauthorized use of a dictionary, as in this case, can not be condoned.