10 N.J. Super. 266 (1950)
77 A.2d 183
ALFIERO PALESTRONI, PLAINTIFF-RESPONDENT,
v.
HARRIET KALISHER JACOBS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 6, 1950.
Decided November 27, 1950.
*269 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Louis J. Greenberg argued the cause for appellant.
Mr. Eugene T. Sharkey argued the cause for respondent (Mr. John J. Wygant, attorney).
The opinion of the court was delivered by WILLIAM J. BRENNAN, JR., J.A.D.
Defendant appeals from a judgment entered in the Bergen County Court upon a jury verdict in plaintiff's favor for a balance due and extras under a building contract. Defendant sought and was denied a new trial for alleged error of the trial judge who, without prior notice to defendant or her counsel, supplied the jurors with a dictionary at their request while they were deliberating.
The irregularity of the privy communication of the judge with the jury must be deprecated in the strongest terms. State v. Auld, 2 N.J. 426 (1949). Such communication borders perilously close in every case on an infringement upon the litigant's basic right to due process and in particular circumstances may in fact invade that right. Leonard's of Plainfield, Inc., v. Dybas, 130 N.J.L. 135 (Sup. Ct. 1943).
Moreover, the trial of a law suit is public business usually to be conducted openly for all to see. This principle inheres in Rule A9 of the General Rules of Administration enjoining judges so far as possible to conduct all judicial business involving conferences with members of the bar or *270 litigants in open court. The principle applies with greater force to the relations of a judge with the jury; it is difficult to conceive any circumstances justifying his communication with the jury on matters pertinent to the issues to be decided by it, except in open court and, where practicable, in the presence of counsel if they choose to attend. The principle has had forceful expression elsewhere; for example, over a century and a quarter ago the highest court of Massachusetts set aside a verdict for privy communication of the judge with the jury and said: "It is not sufficient to say this power (of the judge to control the trial) is in hands highly responsible for the exercise of it; the only sure way to prevent all jealousies and suspicion, is to consider the judge as having no control whatever over the case, except in open court in the presence of the parties and their counsel." Sargent v. Roberts et al., 18 Mass. 337 (Sup. Jud. Ct. 1823).
The trial court's error had unfortunate consequences. The jurors consulted the dictionary and in the circumstances of this case this vitiated their verdict. The dictionary was consulted to ascertain the definition of the word "wainscot" which appeared (mis-spelled "wainscote") in the specifications in evidence. The specifications required plaintiff to "wainscote wall of kitchen lavatory and bathroom on 1st and 2nd floor entire height including ceiling around shower with 4- 1/4 x 4- 1/4" cushion edge tile," and also to "have a good scratch coat of cement plaster" "behind all tile wainscotes."
The jurors' depositions taken by plaintiff in opposition to the motion disclosed there was an uncertainty in the minds of some jurors as to the meaning of the word. The juror who suggested getting a dictionary to clarify the doubt read aloud to the other jurors from the dictionary. This record does not show precisely what he read; the testimony is merely it was a definition of "wainscot."
Plaintiff's main case dealt largely with claims for 37 items of extra work and materials; defendant's counterclaim covered 16 items of work which she charged plaintiff failed to complete. So far as appears in the record before us, *271 the specification in question was not specially dealt with in the evidence, nor was the specification or the word "wainscot" mentioned in the judge's charge. It is obvious, however, the specification was considered by the jury in arriving at its verdict. It follows a definition of "wainscot" was capable of influencing the jury in its consideration of the specification. However small the part played by the specification in the entire verdict, the whole of the verdict is infected by the taint of illegal and extraneous evidence having the capacity to influence the determination. The rule is well settled that, except it appears the improper matter got before the jury by deception of a party (in which event the verdict should be set aside on other grounds of policy, even if the matter is immaterial, Jessup v. Eldridge, 1 N.J.L. 401 (Sup. Ct. 1795)), the test whether a new trial will be granted is whether the extraneous matter could have a tendency to influence the jury in arriving at its verdict in a manner inconsistent with the legal proofs and the court's charge. If the extraneous matter has that tendency on the face of it, a new trial should be granted without further inquiry as to its actual effect. The stringency of the rule is not mere formalism; the rule is "imperatively required to secure verdicts based on proofs taken openly at the trial free from all danger of extraneous influences," Lamphear v. MacLean, 176 App. Div. 473, 162 N.Y.S. 432 (1916). On elementary principles the jury's verdict must be obedient to the court's charge and be based solely on legal evidence properly before the jury. McLeod v. Humeston & S. Ry. Co., 71 Iowa 138, 32 N.W. 246 (Sup. Ct. Iowa 1887); Guntzer v. Healy, 176 App. Div. 543, 163 N.Y.S. 513 (1917).
We do not know the context of the definition which was read and therefore cannot compare the definition with the specification to test its applicability. This points up the vice of the occurrence. Cf. Daniels v. Barker, 89 N.H. 416, 200 A. 410 (Sup. Ct. N.H. 1938), where a new trial was granted when a jury consulted a dictionary and the purpose of doing so did not appear; the court said, "for all that here *272 appears, the jury may have used the dictionary to learn the meaning of some word or phraseology in the court's charge, and thus have given the charge a construction varying from the meaning intended by the court to be conveyed." Similarly, "wainscot" may have been used by the parties in a sense different from the definition read by the juror; defendant was at least entitled to the opportunity to apprise the court in advance that defendant did or did not contend this was the case. Too, even if the word was employed in the specification with its ordinary meaning, defendant was denied the chance to challenge the completeness of the definition given in the dictionary used. Her counsel might have properly suggested that another dictionary containing a more comprehensive definition was more appropriate; a student's dictionary provides a substantially condensed definition hardly as enlightening as the major work of Webster. Plainly the jury's reference to the definition without prior opportunity of defendant or her counsel to be heard on its propriety in the circumstances brought into their deliberations an extraneous factor capable of affecting their conclusions and thus invaded defendant's basic right to have the case decided on the legal evidence.
It is no answer the jury may think they were not influenced by the definition. The law holds it is impossible for them to say what effect it had on their minds. Hix v. Drury, 22 Mass. 296 (Sup. Jud. Ct. 1827). The test is capacity of the irregular matter to influence, not whether influence in fact resulted. See Whitney v. Whitman, 5 Mass. 404 (Sup. Jud. Ct. 1809); McLeod v. Humeston & S. Ry. Co., supra; In re Merrill's Estate, 202 Iowa 837, 211 N.W. 361 (Sup. Ct. Iowa 1926); Benson v. Fish, 6 Me. 118 (1829).
Thus a new trial was denied when the incompetency of matter irregularly before the jury was considered not to have the tendency to influence because its incompetency as evidence had been made known to the jurors during the trial, Falzarano v. Delaware, L. & W.R.R. Co., 119 N.J.L. 76 (E. & A. 1937); and because the writing improperly sent to the jury by the judge simply iterated portions of the judge's charge, *273 State v. Auld, supra; and because the matter was a deposition which merely repeated the witness' testimony at the trial, State v. Kysilka, 84 N.J.L. 6 (Sup. Ct. 1913).
A new trial has been granted, however, where the jury resorted to dictionary definitions of words and expressions having a technical legal signification already explained in the court's charge, In re Phelan, 126 N.J.L. 410 (Sup. Ct. 1941) ("undue influence"); In re Collins, 18 N.J. Misc. 492 (Cir. Ct. 1940) ("undue influence"); Long v. Payne, 198 App. Div. 667, 190 N.Y.S. 803 (1921) ("assume"); but see contra, Wright v. Clark, 50 Vt. 130 (1877) ("wanton"), criticised and not followed in Daniels v. Barker, supra.
The use by a jury of a dictionary has an obvious potentiality for harmful influence. The danger is ever present it may be employed to ascertain meanings not just of one but of many words used in the court's charge or in papers in evidence. The jurors' word alone that its use was limited is too weak a reed upon which to rest the difficult decision whether the verdict was subject to improper influence. Jurors should be required to advise the judge in open court of their doubt and desire for guidance and should be instructed by him in the presence of counsel if counsel care to attend. Cf. Leonard's of Plainfield, Inc., v. Dybas, supra.
It is true that motions to set aside verdicts for alleged prejudice in the reference of jurors to improper matter during their deliberations are always addressed to the sound legal discretion of the court and cannot ordinarily be brought to the test of any fixed and definite rule. Rules 1:2-20 and 4:2-6 enjoin, moreover, that on our review a new trial shall not be granted for an error of this kind unless, after examination of the whole case, it appears the error injuriously affected the substantial rights of a party. When, however, a new trial is sought because a jury consulted extraneous matter, another element has to be considered; a new trial should be granted or refused "with a view, not so much to the attainment of exact justice in the particular case, as to the ultimate effect of the decision upon the administration *274 of justice in general." Hutchinson v. Consumers Coal Co., 36 N.J.L. 24 (Sup. Ct. 1872).
Plaintiff argues defendant is estopped to ask for a new trial because her counsel had knowledge the dictionary was being sent to the jury. This is based on the testimony of the court attendant who acted as the judge's messenger to carry the dictionary to the jury room. Both trial counsel were waiting in the rotunda of the courthouse. As the attendant passed them on the way to the jury room, he said, "I have a dictionary for the jury," or "the jury wants a dictionary," or "words to that effect." Just what defendant's counsel should or could have done in the circumstances has not been made plain. The attendant was obeying the court's instructions already given without prior notice to counsel. Clearly, counsel had no authority to countermand the court's directions to the attendant. The error had been committed beyond counsel's power to remedy it. Murphy v. Zimmerman, 9 N.J. Misc. 728 (Sup. Ct. 1931) and Nordsick v. Baxter, 64 N.J.L. 530 (Sup. Ct. 1900), relied on by plaintiff, are readily distinguished; in both cases counsel had ample opportunity before the jury retired to bring the incident to the court's attention. Silak v. Hudson & Manhattan R.R. Co., 114 N.J.L. 428 (Sup. Ct. 1935), also relied on by plaintiff, was decided on the ground no prejudicial harm had resulted to defendant from the incident.
We have not overlooked the point made by counsel for the defendant that the jurors' depositions were not competent evidence for any purpose on his motion for a new trial.
Counsel argues this was not a situation in which jurors charged with misbehavior may be heard in their own exculpation as held in Kennedy v. Kennedy, 18 N.J.L. 450 (Sup. Ct. 1842); Douglass v. Kabalan, 22 N.J. Misc. 200 (Sup. Ct. 1944); Queen v. Jennings, 93 N.J.L. 353 (Sup. Ct. 1919). This is so. It does not follow, however, as he contends, that the depositions are to be considered as offered solely to show the verdict was not influenced by the use of the dictionary. True, the depositions did elicit the jurors' *275 testimony whether their verdict was influenced by the definition and it is plain the depositions to that extent were wholly incompetent; it is against the policy of the law to receive the affidavits of jurors to show or explain the reasons or the methods of the jurors or any of them in giving or consenting to the verdict or "what was put into it." Pulitzer v. Martin S. Ribsam & Sons Co., 19 N.J. Misc. 233 (Sup. Ct. 1941); Hutchinson v. Consumers Coal Co., supra. This is for the same reason of policy which will not receive evidence of jurors to impugn or destroy their verdict, Lindauer v. Teeter, 41 N.J.L. 255 (Sup. Ct. 1879), as, for example, to show it was based on a misunderstanding of the court's charge, Bragg v. King, 104 N.J.L. 4 (Sup. Ct. 1928), or that the jurors had misinterpreted an exhibit, Marconi v. MacElliott, 8 N.J. Misc. 69 (Sup. Ct. 1910); cf. Peters v. Fogarty, 55 N.J.L. 386 (Sup. Ct. 1893).
Jurors may state, however, whether the dictionary was requested, received or used by them. In re Collins, supra; In re Phelan, supra. If it was not consulted, it is the same as if it had not been delivered to them. Hix v. Drury, supra.
Thus, the authorities do not support counsel's argument; it appears well settled the jurors' depositions are competent to show whether they consulted the dictionary. The next step is more troublesome; should they be permitted to say what definitions they consulted, or without more, is their admission they did consult the dictionary sufficient reason to grant a motion for a new trial? It should be noted Mr. Justice Case, in In re Phelan, supra, stated: "the fact that the use of the volume might be prejudicial is sufficient to vitiate a verdict without proof that the jury did actually give weight thereto." Perhaps, however, this statement is to be read in light of the fact, which seems to be implied earlier in his opinion, that knowledge the jurors had used the dictionary to ascertain the meaning of the words "undue influence" was obtained from the jurors themselves.
We have no occasion to fix the limits of jurors' testimony in this case. Our conclusion that a new trial must be granted *276 results whether we rely solely on the evidence the dictionary was consulted, or go further, as plaintiff insisted we should do, and as we did, and consider also the jurors' evidence the dictionary was used to ascertain the meaning of "wainscot" and was used for that purpose only.
The delicacy of any inquiry of jurors, however, suggests the preference as to practice that their depositions be taken before the trial judge rather than, as in this case, before an officer appointed by the judge for the purpose.
As there will be a new trial, we have considered defendant's second point that the court erred in striking her third separate defense. This defense invoked against plaintiff a clause of the contract requiring plaintiff to pay defendant "Two hundred and fifty dollars per week, or any part thereof, upon his failure to have the building completed and ready for occupancy after October 1st, 1947." The trial court viewed the clause to be unenforceable in the circumstances of the case, construing it as a penalty and not as a provision for liquidated damages. 218-220 Market St. Corp. v. Krich-Radisco, Inc., 124 N.J.L. 302 (E. & A. 1939). We are satisfied from our examination this was not error.
Reversed. Costs to abide the event.