Norma B. SANCHEZ et al., Appellants,

v.

Earl Glynn BILLINGS, Appellee.

No. 606.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

May 31, 1972.

Rehearing Denied June 21, 1972.

Warner F. Brock, John Marshall, Brock & Williams, Houston, for appellants.

Russell H. McMains, Royce R. Till, Fulbright, Crooker & Jaworski, Houston, for appellee.

BARRON, Justice.

This is a wrongful death action brought by the surviving wife, parents and three children of Florentino Rivera Sanchez. The decedent died as a result of burns and injuries suffered in a May 2, 1967 collision between his pickup truck and an oil company tank truck driven by the defendant. On the basis of a jury verdict judgment was rendered that plaintiffs take nothing and plaintiffs now appeal to this Court seeking to overturn the judgment below.

At approximately 9:00 o'clock on the evening of May 2, 1967, the decedent was driving in a southerly direction on East Houston Road, a two lane roadway with asphalt topping. Appellee Billings was proceeding in a northerly direction on the same road enroute to delivering a load of 141 barrels of oil. The two vehicles approached one another at the point where Linda Vista Street branches off from East Houston Road in an easterly direction. As decedent was engaged in turning onto Linda Vista across the path of appellee's trailer-tractor rig, appellee's truck struck decedent's pickup truck in the area of the right door. Following impact the force of the larger truck carried the collided vehicles into a service station on the eastern side of East Houston Road. Decedent's

pickup truck, propelled by the larger tank truck, knocked over two gasoline pumps and came to rest pinned against a pole supporting the canopy of the service station. A fire immediately broke out on the driver's side of decedent's truck and, before bystanders could pull decedent from the truck, he was critically burned. Death followed two days later.

The legal posted speed limit on East Houston Road at the junction with Linda Vista and for half a mile south of that point is thirty-five miles per hour. In response to special issues the jury found that just prior to the time of collision appellee was traveling in excess of thirty-five miles per hour but failed to find this constituted negligence as contemplated by Tex.Rev. Civ.Stat.Ann. art. 6701d, sec. 171(b) (1963). The jury, by conditional instruction, failed to answer the proximate cause issue. No objection was made to the instruction. The jury did find that just prior to the collision appellee was traveling in excess of the speed at which a person of ordinary prudence would have been driving. But the jury failed to find that such negligence was the proximate cause of the collision. Instead, they found that decedent turned in front of appellee at a time when appellee's truck was approaching so closely as to constitute an immediate hazard. This act by decedent they found to be the proximate cause of the accident.

Appellants now question (1) the exclusion of certain proffered evidence, (2) the responses to special issues regarding statutory and common law negligence, proximate cause, failure to maintain a proper lookout, timely application of brakes and failure to turn to the left, (3) the overruling of objections to the submission of special issues inquiring as to contributory negligence, (4) the jury's alleged failure to use the microscope in evidence, and (5) the exclusion of testimony as to "normal" turning distances and speeds. Each point of error alleging that legally insufficient evidence exists to support what is in fact a failure to find, not a jury finding, will be considered an allegation that a contrary finding was required as a matter of law. Points claiming that what is in fact a failure to find is against the great weight and preponderance of the evidence will be treated as a contention that the jury's response is in disregard of the great preponderance of the evidence. See, e. g., Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 1 (1960). Despite the form of some points of error, all request only a remand for new trial. None ask for rendition of judgment.

 Appellants first complain that the trial court was in error when it excluded habit evidence of appellee's nicknames "Speedy" and "Lightning" and prior speeding violations offered to prove that just prior to the May 2, 1967 accident appellee was speeding to such an excess that his speeding constituted the sole proximate cause of the collision. We think the court's action represents no error. Where, as here, an accident is observed by an eyewitness, habit evidence is not admissible. Missouri-Kansas-Texas Railroad Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931 (1956). And see Buchanan v. Central Freight Lines, Inc., 462 S.W.2d 391 (Tex. Civ.App.-Dallas 1970, writ ref'd n. r. e.) in which evidence of a party's past driving record was properly excluded. Moreover, such evidence could at best suggest only that appellee was speeding on the occasion, an element already established. It could in no way indicate by what amount appellee was exceeding the thirty-five mile per hour limit. The evidence in question thus is of minimal probative value in establishing foreseeability and causation, and its exclusion, if error, was harmless.

 Appellants' contention that driving in excess of the thirty-five miles per hour speed limit constituted negligence per se flies directly in the face of Tex.Rev. Civ.Stat.Ann. art. 6701d, sec. 171(b) (1963). That statute expressly requires a plaintiff to prove negligence and proximate cause in a case where defendant has ex-

ceeded the legal maximum speed. Nor do we think that the jury's failure to find appellee's driving in excess of the legal posted limit to be negligence is in disregard of the great preponderance of the evidence. Appellee himself placed his speed immediately prior to the accident at thirty-five to forty miles per hour, although he pointed out that this was an estimate and he could have been traveling at a lesser rate. He further testified that his tractor had five gears with three ranges in each gear—low, intermediate and high. Appellee unequivocally stated that he did not reach fifth high (the highest possible setting) before the collision. His best recollection at three separate points in the record was that he had reached only fourth intermediate gear before the accident occurred.

Appellants introduced two expert witnesses. Both testified regarding readings from a tachograph in appellee's truck. This instrument records the revolutions per minute of the engine at all times. Richard L. Madison, an engineer, testified that from the tachograph chart markings appellee apparently eased off the accelerator as he approached the intersection. This decrease in r.p.m.'s is distinct from the sudden decrease evidencing the abrupt move of appellee's foot from the accelerator to the brake pedal shortly before impact. Moreover, while Captain Charles H. Ruble, a member of the San Antonio Police Department, calculated appellee's speed prior to collision as "in excess of 40 miles an hour", Madison testified that a truck such as appellee's driving in fourth intermediate gear at the r.p.m. registered on the tachograph just prior to the accident would have been traveling at thirty-one miles per hour. The only other material evidence pertaining to appellee's speed is the affirmative reply in the deposition of the eye-witness John Ray Cutbirth to a question asking whether appellee was traveling "in excess of 35 miles an hour". From the above it is clear that the record allowed the jury to decline to find appellee to be negligent in exceeding the statutory speed limit. Any evidence to the contrary is of little value under the circumstances.

In answer to special issues 4 and 5 the jury found appellee's speeding constituted negligence under the common law theory, but they failed to find that such negligence was a proximate cause of the collision. Contrary to appellants' assertion, a finding of negligence does not by itself necessarily compel a finding of proximate cause. And, in the instant case, if the jury was entitled to find the decedent contributorily negligent, then the failure to find proximate cause is immaterial, even should it be unreasonable.

Whether the trial court erred in overruling appellants' objections to the submission of special issues 15, 16, 19 and 20 regarding contributory negligence is now immaterial inasmuch as the jury either answered them favorably to appellants or left them unanswered. In addition, we think that the jury's findings of contributory negligence and proximate cause of the fatal collision find adequate factual support in the record. Appellants' position is founded upon the testimony of Captain Ruble, much of it in response to hypothetical questions assuming disputable data. The jury was the proper judge of Captain Ruble's credibility, and they were entitled to discount it if they so chose. From the exhibits it is apparent that the decedent cut his proposed turn onto Linda Vista sharply. Appellee testified that his truck was closer to the intersection than was the decedent's as they approached one another. Further, the location of the point of impact in the intersection and the location of the point of contact on the decedent's truck reveal that, contrary to appellants' contention, the pickup truck was but midway through its turn when struck.

Appellee's statement to the police and his testimony concur in placing the decedent's truck no more than two car lengths (approximately forty feet) from appellee's truck when appellee first saw the decedent's pickup truck. Appellee repeat-

**916**

edly testified that the pickup then suddenly turned in front of his tank truck approximately eighteen feet away. Evidence placing the speed of decedent's truck between fifteen and twenty-five miles per hour just prior to impact is not necessarily contradictory to testimony that decedent suddenly cut across appellee's lane. Appellee's theory of the accident is that decedent turned across appellee's path at very close range, not at high speed, but unexpectedly. The record is devoid of evidence to demonstrate that the facts were otherwise.

We have carefully examined appellants' points of error challenging the jury's responses to special issues regarding maintenance of a sufficient lookout, timely application of the brakes and failure to turn to the left. In each instance the jury's failure to find favorably to appellants was not in disregard of the great preponderance of the evidence, and these points of error are overruled.

Appellants complain that the jury was "unable to use the microscope received into evidence". That is sheer speculation. As appellants concede, the jury, after first having requested assistance in operating the miscroscope, informed the trial court that no assistance was needed. That could indicate that the microscope was in fact used. Jury responses unfavorable to appellants do not necessarily demonstrate that the microscope was not employed. Even so, the jury was under no obligation to use the microscope in examining the tachograph charts in evidence.

The last issue raised is the propriety of the trial court's exclusion of assorted testimony by an expert witness. As for the evidentiary items now complained of, there appears no abuse of the trial court's discretion in excluding any of them. For example, testimony regarding a normal turning speed was immaterial to the present suit. The speed and turning path of decedent's truck was already established by direct testimony. For the same reason testimony as to traces left by abrupt high speed turns was immaterial. Moreover, counsel's question regarding the significance of no finding of scuff marks was withdrawn following the trial court's sustaining an objection to it and thus any error in the court's action is now harmless. And the trial court's exclusion of testimony regarding swerve marks was limited to the unsolicited testimony volunteered by the witness that accident investigators routinely inspect an accident scene for swerve or scuff marks. Further, counsel's question inquiring as to whether decedent's truck was in a "normal" turning position asks of an expert what is not subject to expert testimony. As for turning experiments conducted by the witness at the fatal intersection, the record is devoid of any evidence to indicate that the conditions under which the witness conducted the experiments were substantially the same as those attending the collision.

Affirmed.