251 N.J. Super. 327 (1991)
598 A.2d 229
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LAURIE W. ANDERSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 17, 1991.
Decided October 18, 1991.
*328 Before Judges PRESSLER, SKILLMAN and D'ANNUNZIO.
Nicholas P. Apicelli, attorney for appellant.
James W. Holzapfel, Ocean County Prosecutor, attorney for respondent (David D. De Fillipo, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
Defendant was convicted by a jury in a joint trial with her husband John Anderson of two counts of receiving stolen property, in violation of N.J.S.A. 2C:20-7.[1] The court sentenced her to a five year term of probation on the condition that she serve a 364 day term of imprisonment in the county jail. The court also required defendant to pay $6,000 in restitution. This court granted defendant's motion for bail pending appeal with respect to the custodial part of her sentence.
On appeal, defendant makes the following arguments:
I. ERRONEOUS SUBMISSION OF UNADMITTED EVIDENCE TO THE JURY, WHICH CAUSES DEFENDANT TO SUFFER PREJUDICE AS A RESULT, IS REVERSIBLE ERROR, AND FAILURE TO DECLARE A MISTRIAL IS AN ABUSE OF THE TRIAL COURTS DISCRETION.
II. FAILURE TO GRANT A SEVERANCE FROM PREJUDICIAL JOINDER TO LAURIE ANDERSON WAS AN ABUSE OF THE TRIAL COURT'S DISCRETION WHERE THE EVIDENCE AGAINST HER CO-DEFENDANT WAS FAR MORE DAMAGING THAN THE EVIDENCE AGAINST HER CAUSING THE GUILT OF JOHN ANDERSON TO "RUB OFF" ON HER.

*329 III. THE TRIAL JUDGE ABUSED HIS DISCRETION WHEN HE FAILED TO SUPPRESS THE EVIDENCE SEIZED FROM THE DEFENDANTS' HOME SINCE THE POLICE VIOLATED THE DEFENDANT'S RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES BY USING EXCESSIVE FORCE AND RECKLESSNESS IN THE EXECUTION OF THE SEARCH WARRANT.
Defendant's second and third points are clearly without merit and do not require discussion. R. 2:11-3(e)(2). However, we conclude that the trial court committed reversible error in permitting the jury to consider evidence which was not admitted at trial.
The relevant facts may be briefly stated. The State charged that defendant's husband burglarized a jewelry store located in a flea market on Route 70 in Lakewood on March 6, 1988 and stole in excess of $100,000 in merchandise. There were no eyewitnesses to the crime. However, two store employees identified defendant's husband from a police photo array as a person who had been in the store the day before the burglary. Consequently, the police commenced an undercover investigation of defendant's husband, which involved the examination of garbage put out for disposal at the home he occupied with defendant and his parents.[2] This investigation revealed a soup can containing numerous jewelry tags used in the store and a money wrapper identified as having been stolen in another burglary.
Based on this information, the police obtained a warrant to search defendant's home. This search revealed approximately $10,000 in jewelry which the owners of the jewelry store identified as part of the proceeds of the crime. The search also revealed a blue sports bag which the owners claimed had been taken in the burglary and which the State theorized had been used to transport the jewelry from the store. Some pieces of jewelry identified as having been taken from the jewelry store were found in the bedroom which defendant occupied with her *330 husband and other pieces were found in the bedroom occupied by her husband's parents.
Defendant testified in her own defense that all of the jewelry found in her bedroom had been purchased by her or by family members. She also testified that she had purchased the blue sports bag at a local store. Defendant's testimony was supported by her sister, who testified that she purchased several of the alleged stolen pieces of jewelry as gifts for her sister and that she had seen some of the other pieces in defendant's home prior to the burglary.
During its deliberations, the jury sent the trial judge a note which stated: "Jury found a tag in blue bag matching the other tags." The members of the jury subsequently indicated that they had found the jewelry tag stuck in a seam between the side and bottom of the sports bag shortly after commencing their deliberations. Defendants moved for a mistrial, arguing that they were unaware of the presence of the tag in the bag and therefore were deprived of the opportunity of presenting any defense to this evidence during trial. The trial judge denied the motion, ruling that the jewelry tag was part of the evidence because it was discovered in the bag. He then told the jury:
My response to you is that what is in evidence is for your consideration and that it wouldn't be appropriate, in my opinion, to comment in any way on evidence.
The trial court erred in indicating that the jewelry tag discovered by the jury during its deliberations could be considered evidence because the tag was contained in a bag admitted into evidence. When the sports bag was offered into evidence, neither the State, the defense nor the court were aware that the jewelry tag was inside. Consequently, what was admitted into evidence was an empty sports bag, not a bag containing a jewelry tag. Indeed, had the tag been discovered in the bag prior to or during trial, the State would have been required to establish as a foundation for its admission into evidence that the tag had been in the bag when it was found in the search of *331 defendant's home rather than having been placed there subsequently. See State v. Binns, 222 N.J. Super. 583, 593-94, 537 A.2d 764 (App.Div.), certif. denied, 111 N.J. 624, 546 A.2d 540 (1988); State v. Brown, 99 N.J. Super. 22, 27-28, 238 A.2d 482 (App.Div.), certif. denied, 51 N.J. 468, 242 A.2d 16 (1968).
This case is thus significantly different from State v. Aiello, 91 N.J. Super. 457, 468-69, 221 A.2d 40 (App.Div. 1967), in which we found no error in the trial court allowing a car coat contained in a carton admitted into evidence to be taken into the jury room. Aiello does not suggest that the defendant was unaware the contents of the carton included the car coat. Consequently, the defendant in Aiello, unlike the defendant in this case, had ample opportunity to object to the car coat being included with the other contents of the carton and to present any rebutting evidence.
The facts of this case are more like Farese v. United States, 428 F.2d 178 (5th Cir.1970), in which the jury discovered $750 in large denominations in a freshly laundered shirt inside an attache case seized from a defendant accused of transporting a forged and fraudulently made security in interstate commerce. The court held that the jury's consideration of the money, which neither the government nor the defense had been aware of during trial, was reversible error and indeed infringed upon defendant's Sixth Amendment rights to trial by an impartial jury and to confrontation of the witnesses and evidence against him:
It is a fundamental principle that the government has the burden of establishing guilt solely on the basis of evidence produced in the courtroom and under circumstances assuring the accused all the safeguards of a fair trial. Trial jurors have no right to investigate or acquire information relating to the case outside of that which is presented to them in the course of the trial in accordance with established trial procedure.
........
Our rules of evidence are designed to exclude from consideration by the jurors those facts and objects which may tend to prejudice or confuse. Evidence presented under the exclusionary rules is subject to cross-examination and rebuttal.... Exposure to evidence through discovery of secreted material is *332 not subject to these safeguards. In the case here, it cannot be said that appellant secured judicial protection of his constitutional rights when money, neither introduced nor properly received into evidence in open court, was discovered by the jurors in the confines of the jury room. [Id. at 179-80].
We are satisfied that, as in Farese, the jewelry tag which the jury discovered in the sports bag was not part of the exhibit introduced at trial, but rather non-evidential information obtained by the jury outside the courtroom, without the State being required to establish its admissibility or the defendant being given any opportunity for rebuttal. Therefore, the trial court erred in allowing the jury to consider this jewelry tag as evidence.
Furthermore, although the State presented compelling other evidence of defendant's guilt, we are unable to conclude that this error was harmless. When a jury considers as evidence something which was not admitted at trial, the potential for prejudice may be even greater than when evidence is erroneously admitted. A party who has unsuccessfully objected to the admission of evidence has the opportunity to mitigate whatever prejudicial impact the evidence may have by presenting rebutting evidence and commenting upon the evidence in closing argument. However, if a jury considers as evidence something which was not admitted, a party who is adversely affected by that unadmitted evidence is deprived of any opportunity to rebut the evidence, to comment upon it in closing argument or to take the evidence into account in formulating trial strategy.
Consequently, courts have been reluctant to view a jury's consideration of unadmitted evidence as harmless error. See, e.g., United States v. Luffred, 911 F.2d 1011, 1014-15 (5th Cir.1990); United States v. Hans, 738 F.2d 88, 93 (3rd Cir.1984); Gibson v. Clanon, 633 F.2d 851 (9th Cir.1980), cert. denied, 450 U.S. 1035, 101 S.Ct. 1749, 68 L.Ed.2d 231 (1981); United States v. Howard, 506 F.2d 865 (5th Cir.1975); Farese v. United States, supra; Dallago v. United States, 427 F.2d 546 (D.C. Cir.1969); United States v. Adams, 385 F.2d 548, 550-51 *333 (2nd Cir.1967); Williams v. State, 448 So.2d 49 (Fla.Ct.App. 1984); cf. Vaughn v. United States, 367 A.2d 1291 (D.C.Ct.App. 1977). Thus, the court in Adams concluded that the submission to the jury of an unadmitted handwritten note of a narcotics agent was reversible error even though the note was only a synopsis of facts to which the agent testified at trial. Judge Friendly, speaking for the court, stated that "the principle that the jury may consider only matter that has been received in evidence is so fundamental that a breach of it should not be condoned if there is the slightest possibility that harm could have resulted." Id. at 550-51. Another court described its reluctance to view a jury's consideration of unadmitted evidence as harmless error in metaphorical terms:
The dagger of hidden evidence must not be taken from its scabbard for the first time in the jury room to wound the defendant; and unless its piercing effect is only skin deep and without prejudice to the anatomy of the trial, we must apply a constitutional salve. [United States v. Howard, supra, 506 F.2d at 866].
In Gibson the court concluded that a new trial was required because members of the jury had conducted independent research in a medical encyclopedia. The court rejected the government's contention that the jury's consideration of this evidence was harmless error, stating:
[W]hen a jury considers facts that have not been introduced in evidence, a defendant has effectively lost the rights of confrontation, cross-examination, and the assistance of counsel with regard to jury consideration of the extraneous evidence. In one sense the violation may be more serious than where these rights are denied at some other stage of the proceedings because the defendant may have no idea what new evidence has been considered. It is impossible to offer evidence to rebut it, to offer a curative instruction, to discuss its significance in argument to the jury, or to take other tactical steps that might ameliorate its impact. [633 F.2d at 854].
The reasons identified in Gibson for rejecting the government's claim that the jury's consideration of unadmitted evidence was harmless error are fully applicable to this case. Based on the evidence presented in the State's case, the jury could have found that defendant's husband committed the burglary and made a gift of some of the proceeds to his wife, without finding that she "knew" the jewelry had been stolen. *334 Consistent with this view of the evidence, the jury also could have inferred that defendant's husband was solely responsible for placing the jewelry tags in the soup can discovered in their garbage. However, the jury's discovery of the jewelry tag in the sports bag after defendant testified that she bought the bag in a local store seriously undermined defendant's credibility and reinforced the State's evidence that she was a knowing participant in the offense. And since the tag was not discovered until after all evidence had been presented, defendant was deprived of any opportunity of offering evidence to explain its presence in the bag. For example, if this evidence had been offered at trial, defendant may have been able to show that the tag found in the bag had residue upon it similar to the residue on the tags discovered in the soup can, thus suggesting that the tag had somehow fallen into the bag while it was in police custody. Alternatively, if defendant was unable to raise doubt whether the tag was in the bag when it was seized in her home, defense counsel may have adopted a completely different strategy for the presentation of defendant's case. Defendant may have elected not to take the stand, or if she had testified, her attorney may have refrained from eliciting testimony that she bought the sports bag in a local store. Cf. State v. Blake, 234 N.J. Super. 166, 173, 560 A.2d 702 (App.Div. 1989) (the prosecutor's failure to disclose defendant's alleged inculpatory statements to defense counsel was reversible error, because without this information "defense counsel could not possibly have given defendant fully informed advice" whether to take the witness stand). Consequently, we have reasonable doubt whether the jury's consideration of the jewelry tag "led [it] to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336, 273 A.2d 1 (1971).
Accordingly, we reverse defendant's conviction and remand the matter for a new trial.
NOTES
[1] John Anderson's appeal of his conviction was dismissed for lack of prosecution.
[2] Defendant did not challenge the validity of this search. See State v. Hempele, 120 N.J. 182, 576 A.2d 793 (1990).