657 A.2d 1189

CHARLES BOLAND, PLAINTIFF–RESPONDENT,
v. PETER DOLAN AND JUDY DOLAN,
DEFENDANTS–APPELLANTS.

Argued January 30, 1995—Decided May 17, 1995.

*Jay H. Greenblatt* argued the cause for appellants (*Mr. Greenblatt*, attorney; *Mr. Greenblatt* and *Charles S. Epstein*, on the brief).

*Roy D. Curnow* argued the cause for respondent (*Drazin and Warshaw*, attorneys).

The opinion of the Court was delivered by

GARIBALDI, J.

This appeal arises out of a slip-and-fall accident that occurred while plaintiff, Charles Boland, was a tenant in a three-family beach house owned by defendants, Peter and Judy Dolan. At the time of the accident, plaintiff was inside the vestibule of the house. As he walked into the vestibule with a clapboard and volleyball net in his hands, "something caught his foot and he slipped." As a result of his fall, plaintiff suffered multiple fractures to his ankle.

Plaintiff sued defendants for negligently permitting a dangerous condition on their property. Plaintiff's theory was that a defective plastic rug runner caused his slip and fall. Defendants' theory was that plaintiff's slip and fall was caused in whole or in part by the worn right sole of his topsider shoe. Before plaintiff was taken to the hospital, another tenant took a photograph that showed the bottom of that shoe. That photograph (Photograph) was admitted into evidence.

At issue is whether the jury's use of a magnifying glass on that properly admitted Photograph during deliberations constituted new or additional evidence, required instruction from an expert, or resulted in harmless error under *Rule* 2:10–2. We conclude that the magnifying glass did not constitute "new evidence." Rather, it was a mere aid to assist the natural vision of the jurors. Use of a familiar device like an ordinary magnifying glass generally does not require expert testimony. Moreover, the jury's use of the magnifying glass was not error capable of producing an unjust result under *Rule* 2:10–2.

## I.

Plaintiff lived in the second floor apartment, and his landlords, Peter and Judy Dolan, lived in the first floor apartment of the Victorian-style house. Plaintiff testified that on the day of the accident, anticipating a hurricane, he hurriedly removed various recreational items from the beach. At trial, plaintiff filled in on a diagram pertinent parts of the scene in the foyer. Plaintiff drew a plastic rug runner and stated that "as soon as [I] set my foot in here, something snagged my foot, slipped, my foot went this way.... But, I went that way, snagged the rug with the runner. I went back,.... I had nowhere to go but straight down and that's when I went down." Two engineers testified as experts on the role of the rug runner in his fall, and much of the testimony at trial focused on the rug runner.

Plaintiff also testified that at the time of the accident, he had worn topsider boat shoes because he worked in the boat business

and knew that that type of shoe was made for walking on wet decks, for which the shoe had a "corrugated sole that channels the water away and they are as slip proof as you can get." He further testified that he could not recall how long he had owned those shoes, that they were not "worn through or worn out," and that he "was wearing them every day for work."

While plaintiff was sitting on the rug runner before the ambulance arrived, the tenant from the third-floor apartment took the Photograph that shows the entire sole of plaintiff's right shoe. Eleven days prior to trial, defense counsel, having been substituted as counsel three days earlier, requested that Photograph from plaintiff's counsel. Defense counsel learned of the existence of the Photograph because a photocopy of it had been attached to plaintiff's interrogatories. At trial, plaintiff's counsel conceded that he had not responded to counsel's request prior to trial because he "was out of the office for a couple of days." Therefore, defense counsel did not see the Photograph until he requested it during the first morning of the trial.

At the request of defense counsel, the Photograph was marked into evidence. Plaintiff was extensively cross-examined about the condition of his shoes. He repeatedly testified that the bottoms of his shoes were serviceable and "more than adequate." Defense Counsel showed plaintiff the Photograph. Plaintiff described the Photograph as showing "very clearly the areas [on the shoe] that are white or light tan, are the areas that I walk on and the areas in the archway [sic] are dark, it may appear as though it's worn." Defense counsel then asked the trial judge if he could pass the Photograph to the jury "with a glass." In response, the trial judge told defense counsel to "[j]ust pass the picture." Plaintiff's counsel did not ask plaintiff about the Photograph on re-direct.

On direct examination, defendant Judy Dolan briefly viewed the Photograph and stated that it accurately portrayed the condition of plaintiff's shoe on the day of the accident. Without being shown the Photograph, defendant Peter Dolan then testified that the bottoms of plaintiff's topsiders "were bald with a trace of

grooves—traced grooves" on the day of the accident. When he was later shown the Photograph, defendant Peter Dolan stated that it showed the way the shoes looked "right after the accident."

It was not until the end of defense counsel's summation that the Photograph again was discussed. Defense counsel then observed that plaintiff's expert on the rug runner had "switched" his testimony because that expert had heard the testimony about the Photograph. Defense counsel then stated:

> What a stroke of luck, what a stroke of luck to get a picture showing the underside of that shoe. And I'm going to ask his Honor to allow you to look at it as though it were blown up under magnification. You can see the underside of that shoe very clearly. How very, very, very smooth it was. Is that honest?

Plaintiff did not object to defense counsel's summation. Only on appeal did he first assert that such an argument was prejudicial.

Plaintiff's counsel did not question his own client or any witnesses about the Photograph. He did, however, refer to the Photograph in his summation:

> Now, it's incredible that if you listen to what the Dolans have to say [sic] it is the picture perfect defense. They're saying that he was carrying a volleyball net and it just by happenstance, the volleyball net caught the cement corner as he's walking up and then he goes down. And then—also they looked at his boat shoes, and he has no tread on his boat shoes. I mean it's all picture perfect.

The trial judge made no direct reference to the Photograph or the magnifying glass in his jury charge. After the jury left the courtroom, defense counsel asked the court to allow the jury to use a magnifying glass to view the Photograph. The trial judge replied, "Okay," and then asked if the charge had been sufficient. Only then did plaintiff's counsel state, "the only problem I have is the magnifying glass. I don't know if that's appropriate. There's been no testimony that it doesn't distort the photograph. I have no idea what that magnifying glass is going to do to these photographs." Pursuant to that post-jury-charge objection, the trial judge instructed plaintiff's counsel to "look at it, see what you think." During that examination, defense counsel stated, "[i]t is optically the same as magnifying, by enlarging a print for the photograph." Plaintiff's counsel then objected to the jury being

given the magnifying glass because "there should be—have been evidence on that issue."

Sustaining plaintiff's counsel's objection, the trial judge instructed a court officer to take all exhibits to the jury. After deliberating for approximately one-half hour, the jury requested a magnifying glass. Outside the presence of the jury, the trial judge discussed the jury's request with counsel. Defense counsel insisted that the "magnifying glass is not evidence, it doesn't prove anything, it's like a ruler. And I wouldn't have to bring somebody into this Courtroom to calibrate a ruler in order to give it to the jury as an aid." He also explained how he could not have obtained a blown-up version of the Photograph for juror use in lieu of using the magnifying glass because the Photograph was only turned over by plaintiff during the course of trial.

In opposition to the jury's request, plaintiff argued that defendants were trying to "change the evidence in this case." The trial judge disagreed, stating that defense counsel "talked about—through the issues, so he's not changing anything." Plaintiff's counsel then argued that he had not had an opportunity to look at the Photograph with the magnifying glass until the trial judge had urged him to do so after the jury was removed. He argued that the Photograph "comes as a complete surprise to us. That we are not ready for, before this trial and counsel had every opportunity to have those things blown up, and we could have dealt with that during trial. . . ." In response, defense counsel reiterated that he had requested in writing the Photograph more than one week prior to trial, but that plaintiff's counsel had failed to comply with that request.

The trial judge then allowed the jury to use a conventional magnifying glass. In so ruling, the trial judge mentioned that defense counsel had previously requested that the jury use a specialized type of magnifying glass called a "lupe." Plaintiff's counsel then "strenuously objected" to the use of the magnifying glass by the jury. The trial judge overruled his objection, stating

> not only did [defense counsel] use it, but the jury asked for it, ... it's not like a dictionary where you can look through and find definitions for this, and definitions for that,.... This is simply a tool for them to look at the photographs ... it's not a distortion or changing the photograph.

As a result, the jury obtained the conventional magnifying glass for the remainder of their deliberations.

The jury returned a verdict of no cause of action in favor of defendants. The foreman stated that no juror had found that defendants had been negligent.

Plaintiff made a motion for a new trial, contending that the court's "admission" of the magnifying glass into evidence constituted a miscarriage of justice. The crux of plaintiff's argument was that he was unduly prejudiced by the admission of the magnifying glass as his counsel did not have an opportunity during the trial to address it and the enhanced image it provided. In response, the trial judge noted that during the trial it had only sustained plaintiff's objection to the use of a more specialized type of magnifying glass. The trial judge reiterated the fact that plaintiff's counsel had never requested to examine the Photograph through the magnifying glass, although he had had several opportunities to view the evidence with the magnifying glass during the trial as well as to rebut any negative inferences that the jury might have drawn from defense counsel's indirect references to the magnifying glass during his summation. The trial judge found that there had been no miscarriage of justice under *Rule* 4:49–1.

The Appellate Division reversed and remanded the case, stating, "We cannot determine ... whether a jury has the knowledge and experience to decide that a shoe of specialized design has lost its slip resistance based on what the jury saw, ... using the magnifying glass. The significance of an enlarged view may have rested solely within the purview of expert testimony." 273 *N.J.Super.* 175, 180, 641 *A.*2d 559 (1994). We granted certification. 138 *N.J.* 262, 649 *A.*2d 1283 (1994).

## II.

Several courts have held that the use of a magnifying glass by a jury in its deliberations is not error. In those cases, the

courts have analogized the use of a magnifying glass to the use of eyeglasses. We find their reasoning to be persuasive.

As early as 1914, New Jersey courts took judicial notice of the undistorted effect of magnifying glasses on pieces of evidence. In affirming a murder conviction, the Court of Errors and Appeals found that the defendant had not proven how the use of a magnifying glass had prejudiced his case. *State v. Cerciello*, 86 *N.J.L.* 309, 313, 90 *A.* 1112 (1914). The *Cerciello* Court ruled that magnifying glasses were "stronger in their magnifying intensity than the ordinary magnifying spectacles which jurymen and the general public use in the affairs of every day life," but "in the absence of proof that the glasses might in some measure unfairly prejudice the defendant's case we are unable to perceive how their admission injured him." *Id.* at 312–13, 90 *A.* 1112.

As in this case, in *United States v. Young*, 814 *F*.2d 392, 395–96 (7th Cir.), *cert. denied*, 484 *U.S.* 838, 108 *S.Ct.* 121, 98 *L.Ed.*2d 79 (1987), the jury asked the foreman for a magnifying glass during its deliberations. The Seventh Circuit found no merit in the defendant's challenge that the district court had complied incorrectly with the jury's request for a magnifying glass without providing the jury a cautionary instruction as to its use. In so ruling, the Seventh Circuit found that the magnifying glass in question was used for exhibits already in the record. *Ibid.* Although it is unclear from the record the type of exhibit the *Young* jury viewed with the magnifying glass, the intent of such use is clear. The *Young* court found that "by providing the jury with a magnifying glass, the district court permitted the jury to make a more critical examination of the exhibits introduced at trial." *Ibid.* In so doing, the *Young* court adopted reasoning from the Ninth Circuit: "We are unable to see how the use of a magnifying glass to view photographs differs from the use of corrective eyeglasses by jurors." *Ibid.* (quoting *United States v. Brewer*, 783 *F*.2d 841, 843 (1986)). The use of a magnifying glass by jurors for exhibits properly introduced at trial is within the trial court's discretion. *Ibid.; accord Bradfield v. Ringsby Truck*

*Lines, Inc.,* 37 *Colo.App.* 123, 546 *P.*2d 500, 504 (1976) (finding that jury's use of magnifying glass to examine photographs was "the mere taking of a more critical examination of an exhibit," not introduction of new evidence).

Likewise, the Tenth Circuit has found that a magnifying glass brought into deliberations by a juror and used by the jury to view a weld that caused the injury at issue was not prejudicial to the defendant. *Western Spring Serv. Co. v. Andrew,* 229 *F.*2d 413, 419 (1956). In so ruling, the *Western Spring* court also analogized the use of magnifying glasses to the use of eyeglasses. The court found that the use of a magnifying glass constituted no more misconduct on the juror's part "than it would have been misconduct for him to exchange his regular glasses for more powerful glasses to enable him to better see or more accurately determine the nature of the weld or of the break." *Id.* at 419. In also ruling that the juror's sharing of the magnifying glasses was not misconduct, the court in *Western Spring* found that it was like loaning regular glasses or raising "a shade to admit more light to enable the jurors to better examine the exhibit in question." *Ibid.*

In *State v. Everson,* the Supreme Court of Washington upheld the trial court's decision that had allowed the jury to use a magnifying glass to examine a walking stick belonging to the victim in a hit-and-run case. 166 *Wash.* 534, 7 *P.*2d 603 (1932). Quoting an excerpt from 16 *R.C.L.* 299, that court stated: "If the effect of such an experiment is to put the jury in possession of evidence which should have been but was not offered at the trial, it is not permissible; but, if the experiment involves merely a more critical examination of an exhibit than had been made of it in the court, there is no ground for objection." *Ibid.* Analogizing to the use of eyeglasses by jurors, the court found there was no proper ground for objection to the magnifying glass because "the jury merely more critically examined it by the aid of a magnifying glass. This did not put them in possession of material facts which were not already in evidence." *Id.* at 604, 166 *Wash.* 534.

Likewise, the Supreme Court of Oklahoma has found that jurors' use of a magnifying glass with exhibits of damage caused by blasting operations was an acceptable practice and denied a motion for a new trial based on such use. *Falletti v. Brown*, 481 *P*.2d 744 (1971). The *Falletti* court reasoned that courts "generally treat such use only as assistance to [the] natural power of eyes of jurors to see, and not as additional evidence in the case." *Id.* at 745. In allowing the use of a magnifying glass, the *Falletti* court cited to the Michigan Supreme Court, which had reasoned in an early case that "there was no more mystery in a magnifying glass than in ordinary eyeglasses in daily use" and to the Iowa Supreme Court, which had found in an early case that "it would be a harsh practice not to allow [magnifying] glasses to be handed to a juror who had lost his spectacles." *Ibid.* (citing *Barker v. Perry*, 67 *Iowa* 146, 25 *N.W.* 100 (1885); *Morse v. Blanchard*, 117 *Mich.* 37, 75 *N.W.* 93 (1898)).

Another case decided by our brethren in Missouri, *Layton v. Palmer*, 309 *S.W.*2d 561, 568 (1958), is quite similar to the present case because that court admitted an exhibit of photographs for the use of witnesses and a controversy developed between counsel and the witness about what could be seen in those photos. During cross-examination, counsel stated that he wanted the jury to have access to a particular photo, to which the Court responded, "if there is a magnifying glass here the jury will be permitted to use that." *Ibid.* As in *Young, supra*, opposing counsel did not object to the jury's use of the magnifying glass at trial. Rather, such use was only objected to on appeal.

Furthermore, the Missouri Supreme Court found that the trial court had not abused its discretion in allowing the jury to use the magnifying glass, and cited an "established" rule of 1958: it is not improper for the jury to use a magnifying glass or mechanical device to aid their investigation of handwritings or exhibits that have been admitted into evidence. *Ibid.* (quoting 89 *C.J.S. Trial* § 470 (1955)). In addition to the *Layton* court, many other state and federal jurisdictions have adopted that rule, and various

treatises and annotations have cited it. *In re Thomas Estate*, 155 *Cal.* 488, 101 *P.* 798, 802 (1909); *State v. Wallace*, 78 *Conn.* 677, 63 *A.* 448 (1906); *Alexander v. Blackburn*, 178 *Ind.* 66, 98 *N.E.* 711 (1912); *Barker, supra*, 25 *N.W.* at 100; *Evans v. Commonwealth*, 230 *Ky.* 411, 19 *S.W.*2d 1091 (1929); Morse, *supra*, 75 *N.W.* at 93; *Kannon v. Galloway*, 61 *Tenn.* (2 Baxt.) 230 (1872); *Jones v. State*, 150 *Ga.App.* 300, 257 *S.E.*2d 370 (1979); *Grand Lodge, A.O.U.W. v. Young*, 123 *Ill.App.* 628 (App.Ct.1906); *J.H. Robinson Truck Lines v. Ragan*, 204 *S.W.*2d 662 (Tex.Civ.App.1947); *see Sanchez v. Billings*, 481 *S.W.*2d 911, 916 (Tex.Civ.App.1972); *see also George C. Christopher & Son, Inc. v. Kansas Paint & Color Co.*, 215 *Kan.* 185, 523 *P.*2d 709 (1974) (declining to find jury's disassembling of exhibit was improper and reasoning that "[i]f it had been a written document in fine print, we do not suppose that it would have been improper for the jury to use a magnifying glass"); Annotation, *Tests or Experiments in Jury Room*, 95 *A.L.R.*2d 378 (1964 & Supp.1994); Caroll J. Miller, Annotation, *Propriety of Juror's Tests or Experiments in Jury Room*, 31 *A.L.R.*4th 583 (1994); 89 *C.J.S. Trial* § 470 (1994); 35B *C.J.S. Federal Civil Procedure* § 1071 (1994).

The Appellate Division's failure to follow that well established rule misses the crucial point—that a jury may use a magnifying glass to see or understand better a properly admitted exhibit—such as the Photograph at issue. Instead the Appellate Division relied for support of its position on *State v. Anderson*, 251 *N.J.Super.* 327, 332, 598 *A.*2d 229 (App.Div.1991), and *Palestroni v. Jacobs*, 10 *N.J.Super.* 266, 271, 77 *A.*2d 183 (App.Div.1950).

An examination of those cases, the facts of which are quite different from this case, discloses that they in fact support the position that presenting the jury with a magnifying glass does not constitute supplementing the evidence. The holding of *Anderson, supra*, is that a supplemental piece of evidence that is found by the jury during deliberations is new and unadmitted evidence. 251 *N.J.Super.* at 332, 598 *A.*2d 229. In that trial for the receipt of stolen property, the *Anderson* court held that a jewelry tag

discovered by the jury in a stolen bag could not be considered during deliberations because it had not been admitted properly during trial; rather, it was seen for the first time during deliberations. *Ibid.* The court's finding of inadmissibility of that tag is understandable in light of what the jurors might have assumed when they discovered the tag in a sports bag, which the victims claimed had been taken in a burglary, and in light of the defense counsel's inability to rebut such assumptions during deliberations. *Id.* at 329, 332, 598 *A.*2d 229. Because the defense counsel in *Anderson* did not have that opportunity, the court held, "A party who has unsuccessfully objected to the admission of evidence has the opportunity to mitigate whatever prejudicial impact the evidence may have had by presenting rebutting evidence and commenting upon the evidence in closing argument." *Id.* at 332, 598 *A.*2d 229.

In this case, defense counsel did exactly what the *Anderson* court stated would be permissible: referred to the magnifying glass throughout trial and in his summation. Plaintiff had ample opportunity throughout the trial to view the Photograph with or without the magnifying glass. Indeed, *Anderson* supports the finding that the magnifying glass—referred to repeatedly at trial and requested by the jury in its deliberations to view properly admitted evidence—is not the same as a new piece of evidence first found by the jury during its deliberations.

Likewise, the holding of *Palestroni, supra,* offers no support for plaintiff. There, the trial court allowed the jurors to have a dictionary during its deliberations without the knowledge of the defense counsel. 10 *N.J.Super.* at 269, 77 *A.*2d 183. In that construction contract case, the jury sought the use of a dictionary to understand the definition of the word "wainscot" to decide claims of extra work and materials as well as incomplete performance. *Id.* at 270, 77 *A.*2d 183. Reversing the trial court's denial of a new trial, the Appellate Division focused on defense counsel's inability to rebut any inferences or "challenge the completeness of

the definition given in the dictionary used." *Id.* at 272, 77 *A.*2d 183.

The import of *Palestroni* is that the inherent nature of a dictionary is what makes it supplementary in nature to the legal evidence admitted during trial. Indeed, the trial court explicitly told plaintiff's counsel that a magnifying glass could not be equated to a dictionary: "it's not like a dictionary where you can look through and find definitions for this, and definitions for that, . . . . This is simply a tool for them to look at the photographs . . . it's not a distortion or changing the photograph." In addition, it was the time at which the dictionary was first raised and requested—after the completion of closing arguments and during jury deliberations—and the manner in which the trial court allowed the jury to use the dictionary—without consulting counsel—that strongly influenced the Appellate Division's reversal in *Palestroni.* *See State v. Vaszorich,* 13 *N.J.* 99, 114, 98 *A.*2d 299 (1953) (finding that circumstances of *Palestroni* were not analogous because "irregular matter came to light at a time when all parties and the trial court had a full and ample opportunity to take steps to avoid any improper influence" on the *Vaszorich* jurors). As in *Vaszorich, supra,* such timing is not at issue in the case before us.

The use of the magnifying glass by the jury did not constitute new evidence in this case. Rather, the magnifying glass was an aid referred to throughout the trial. Defendant proffered the magnifying glass on the first day of trial during plaintiff's cross-examination. Because there was no objection from plaintiff's counsel, the trial judge did not rule on its admission at that point. All parties, their counsel, and the jury knew about the possible use of the magnifying glass at that early stage of the trial. Moreover, during the course of the trial, the evidence to be used with the magnifying glass was testified to by plaintiff, defendants, and an expert witness. The trial judge had the discretion and properly allowed the jury to use the magnifying glass. The magnifying glass only highlighted or illustrated evidence properly admitted or testimony of witnesses properly allowed during the trial, and

plaintiff had adequate time to rebut any negative inferences. The magnifying glass did not constitute new evidence.

## III.

Nor do we find that a conventional magnifying glass is acceptable for juror use only after an expert has explained or used it at trial. The governing rule in our jurisdiction is that expert testimony is necessary for subject matter that is "beyond the ken of the average juror" or if it enhances the jury's understanding of the evidence. *See State v. Charles Marshall Berry*, 140 *N.J.* 280, 290, 658 *A*.2d 702; *see also N.J.R.E.* 702; Biunno, *Current N.J. Rules of Evidence*, comment 1 on *N.J.R.E.* 702 (1994–95) (stating "primary justification for permitting expert testimony in the first place is the relative helplessness of the average juror in dealing with a subject which is not a matter of common knowledge"). Because the issue is not usually whether expert testimony is needed, but rather what type of expert is needed or who qualifies as an expert, there is not much case law on this point. *E.g.*, *Landrigan v. Celotex Corp.*, 127 *N.J.* 404, 412–14, 605 *A*.2d 1079 (1992). However,

> [e]xpert testimony will not be admissible unless it assists the average juror to understand the evidence. Thus, such testimony should not be permitted unless it relates to a subject matter which is so distinctively related to some science, profession, business or occupation as to be "beyond the ken of the average laymen."

[*Nesmith v. Walsh Trucking Co.*, 247 *N.J.Super.* 360, 369, 589 *A*.2d 613 (App.Div.1989) (citations omitted), *rev'd on other grounds*, 123 *N.J.* 547, 548, 589 *A*.2d 596 (1991).]

While it is difficult to describe the parameters of knowledge possessed by the average layman, several cases provide examples of when expert testimony is not needed. *See State v. Harvey*, 121 *N.J.* 407, 427, 581 *A*.2d 483 (1990) (finding that neither comparison between shoe print and proffered shoe, nor proposition that "shorter people tend to have smaller feet" required expert testimony); *State v. Odom*, 116 *N.J.* 65, 78, 560 *A*.2d 1198 (1989) (citing common notion that average person or juror can decide whether person was intoxicated) (citation omitted). Thus, *Harvey, supra,*

and *Odom, supra,* combined with the rules and presumptions cited in *supra,* at 182–189, 657 *A.*2d at 1192–1196 support our holding: an instrument of "common knowledge," like an ordinary magnifying glass, generally requires no expert testimony. Conceivably, a circumstance could arise where providing the jury with a magnifying glass, perhaps a special magnifying glass, would be the equivalent of a jury's acquiring new evidence not introduced at trial. But such circumstances are rare and certainly were not present in this case.

■ The Appellate Division puts a misplaced emphasis on the inadmissibility of the magnifying glass without expert testimony. The focus should first be whether such testimony is needed or whether common knowledge suffices for use of the instrument in issue. Failure to address that preliminary question would allow the use of experts for the most mundane of human events, which jurors easily understand without expert testimony. The fact that a magnifying glass is no longer used daily by the average person does not make it a highly complex scientific instrument. Rather, it might be the complexity of our society and our rules of evidence that cloud the issue and suggest that a juror must listen to an expert's opinion prior to the juror's use of a magnifying glass. Thus, we hold that expert testimony was not necessary for the jury to use the flat magnifying glass during its deliberations.

### IV.

■ Plaintiff also contends that the trial judge committed error by giving the magnifying glass to the jury for its deliberations. Our review is under the "harmless error" standard of *Rule* 2:10–2. Under that rule, a reviewing court should reverse only if a trial error is clearly capable of producing an unjust result. *Campo v. Tama,* 133 *N.J.* 123, 132, 627 *A.*2d 135 (1993). That standard demands that the reviewing court determine whether an error at issue was so grave that it caused the jury to be misled, confused, or inadequately informed. *See, e.g., Feldman v. Lederle Labs,* 132 *N.J.* 339, 345, 625 *A.*2d 1066 (1993). Although the magnifying glass was identified and discussed as early as the first

day of trial, the trial judge could have forced the parties and jury to view the Photograph with the magnifying glass during the trial. Then, plaintiff's counsel might have been inclined to rebut any negative inferences that might have arisen from such use. However, the trial judge's failure to direct such viewing was not error "clearly capable of producing an unjust result." *R.* 2:10–2.

As discussed, *supra,* at 178, 657 *A.*2d at 1191, the trial judge allowed reference to the magnifying glass at an early stage of the trial. Moreover, during the course of the trial, the evidence to be examined with the magnifying glass was testified to by plaintiff, defendants, and an expert witness. In addition, although error, the trial judge later marked the magnifying glass and admitted it into evidence while overruling an objection from plaintiff. In overruling plaintiff, the trial judge defined the magnifying glass as "a tool for [the jury] to look at the photographs.... it's not a distortion or changing the photograph." So, after admitting the magnifying glass as evidence, the trial judge ruled that it was an admissible object that highlighted or illustrated the testimony of witnesses, rather than prejudiced plaintiff's case. Although it might have been outside the trial judge's discretion to rule in such a manner post-trial, we are satisfied that that ruling did not prejudice plaintiff. Thus, we reverse the Appellate Division because the magnifying glass merely highlighted or illustrated the testimony of witnesses as well as admissible evidence, and such use did not create sufficient prejudice to justify granting a new trial to plaintiff under *Rule* 2:10–1.

## V.

The judgment of the Appellate Division is reversed, and the judgment of the trial court is reinstated.

*For reversal and reinstatement*—Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN—7.

*Opposed*—None.