SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**State v. Fuquan K. Knight (A-37/38-23) (088970)**

**(NOTE: The Court did not write a plenary opinion in this case. The Court affirms the judgment of the Appellate Division substantially for the reasons expressed in Judge Sabatino's opinion, 477 N.J. Super. 400 (App. Div. 2023).).**

**Argued October 7, 2024 -- Decided December 18, 2024**

**PER CURIAM**

The Court considers defendants Fuquan K. Knight and Shaquan K. Knight's challenges to the trial court's determination to permit the jury to replay surveillance video evidence in slow motion and with intermittent pauses during deliberations.

In October 2018, three men robbed a victim behind a deli. The victim identified defendants as two of the robbers. At trial, defendants disputed the identification and their involvement in the robbery. The State presented a surveillance video taken from inside the deli approximately six seconds in length that showed -- for about two seconds -- four men walking outside past the partially obscured window in the deli's back door. The State played the video as part of its case-in-chief and again several times in closing, once in slow motion.

During deliberations, the jury requested that the video be replayed several more times in slow motion, at other varying speeds, and with intermittent pauses. Over defendants' objections, the judge permitted those playbacks under her supervision in the courtroom. The jury found defendants guilty of armed robbery and other offenses.

The Appellate Division affirmed, discerning no reversible error concerning the slow-motion video replays. 477 N.J. Super. 400, 405 (App. Div. 2023). The court examined case law in this State on replaying video- or audio-recorded testimony during jury deliberations, and other jurisdictions' case law allowing slow-motion replays of video evidence. Id. at 417-20.

The Appellate Division held that, subject to exclusion under N.J.R.E. 403, relevant "surveillance video evidence may be presented during a trial or closing argument . . . in slow motion or at other varying speeds, or with intermittent pauses,

1

if the trial court reasonably finds [it] would assist the jurors' understanding of the pertinent events and help them resolve disputed factual issues." Id. at 425-26. Also subject to N.J.R.E. 403, the Appellate Division found that "trial courts have the discretion to grant a jury's requests during deliberations to replay surveillance videos in such modes one or more times, provided that the playbacks occur in open court under the judge's supervision and in the presence of counsel." Id. at 426.

In exercising their discretion in admitting into evidence or allowing the replay of surveillance video, the Appellate Division determined, trial courts should consider, among other things: (a) whether the video has a soundtrack that contains recorded statements of the filmed persons; (b) whether the video is difficult to discern when played only at normal speed; (c) whether the video can assist in resolving disputed issues of identification; (d) whether the video bears upon disputed issues of intentionality; and (e) whether the video contains content that is particularly disturbing or inflammatory to watch repeatedly in slow motion. Ibid.

The Appellate Division recommended that the Model Criminal Jury Charge Committee consider a model charge to address jury requests to replay surveillance video evidence and to caution jurors to afford such evidence only appropriate and not undue weight in comparison with the other evidence at trial. Ibid.

The Court granted certification. 257 N.J. 244 (2024); 257 N.J. 248 (2024).

**HELD:** The Appellate Division's judgment is affirmed substantially for the reasons expressed in Judge Sabatino's opinion. The Court concurs with the Appellate Division's guidance and list of non-exclusive factors for trial courts to consider in exercising their discretion, although the Court notes that the concerns raised in the study about intentionality cited by defendants would need to be tested under the standard articulated in State v. Olenowski, 253 N.J. 133 (2023). The Court also agrees with the recommendation that the Model Criminal Jury Charge Committee consider a model charge regarding jury requests to replay video evidence. The Court offers additional comments on why watching a video in slow motion is not beyond the ken of an average juror, and why playing the difficult-to-perceive recording here in slow motion to assist the jury was not an alteration or distortion of the video.

1. In State v. Watson, the Court stated that specialized knowledge would not ordinarily be required to present evidence using basic techniques, "like adjusting the speed of a video or creating a straightforward composite video, a screenshot, or an enlarged photo from a video." 254 N.J. 558, 606 (2023). The issue in Watson involved the bounds of proper video narration testimony by lay witnesses, but the principles are relevant here and remain the same: playing a video at a slower speed is a basic action that does not change or alter the admitted video evidence. (pp. 4-5)

2.  In <u>Boland v. Dolan</u>, the Court held that the trial judge properly allowed the jury to use a conventional magnifying glass during deliberations to view a photograph in evidence.  140 N.J. 174 (1995).  First, the Court determined that a magnifying glass was not new evidence, but merely a commonplace tool familiar to the jury.  <u>Id.</u> at 181-85, 188.  The Court differentiated between resources that impermissibly add meaning to evidence and resources that aid understanding by "highlight[ing] or illustrat[ing] evidence."  <u>Id.</u> at 185-87.  Second, the Court did not require expert testimony before the magnifying glass could be used because for "an instrument of 'common knowledge,'" such testimony is usually not needed.  <u>Id.</u> at 189.  (pp. 5-7)

3.  Here, playing in slow motion the same video that was properly admitted into evidence to highlight the action occurring onscreen and assist the jury is generally no different from allowing the jury in <u>Boland</u> to use a magnifying glass to inspect a picture.  But some tools or functions may be so specialized that their usage constitutes an alteration of evidence, or the creation of new evidence.  If a party intends to play a video with something beyond the "basic techniques" noted in <u>Watson</u>, that party must alert the trial court and opposing counsel.  In those situations, a qualified expert may need to testify about the modifications consistent with N.J.R.E. 702.  (pp. 7-8)

       **AFFIRMED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in this opinion.**

# SUPREME COURT OF NEW JERSEY
## A-37/38 September Term 2023
## 088970

---

State of New Jersey,

Plaintiff-Respondent,

v.

Fuquan K. Knight, a/k/a
Fuquan K. Knight, Jr.,

Defendant-Appellant.

---

State of New Jersey,

Plaintiff-Respondent,

v.

Shaquan K. Knight, a/k/a
Shaquan Kyle, and
Shaquan Kyleknight,

Defendant-Appellant.

---

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
| --- | --- |
| October 7, 2024 | December 18, 2024 |

---

Zachary G. Markarian, Assistant Deputy Public
Defender, argued the cause for appellant Shaquan K.
Knight (Jennifer N. Sellitti, Public Defender, attorney;

1

Zachary G. Markarian and Morgan A. Birck, Assistant Deputy Public Defender, of counsel and on the briefs).

Andrew R. Burroughs, Designated Counsel, argued the cause for appellant Fuquan K. Knight (Jennifer N. Sellitti, Public Defender, attorney; Andrew R. Burroughs, on the briefs).

Hannah Faye Kurt, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Theodore N. Stephens, II, Essex County Prosecutor, attorney; Hannah Faye Kurt, of counsel and on the briefs).

Bethany L. Deal, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Matthew J. Platkin, Attorney General, attorney; Bethany L. Deal, of counsel and on the brief).

Deanna L. Koestel argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Pashman Stein Walder Hayden, attorneys; Deanna L. Koestel and Dominique Kilmartin, on the brief).

Charles Kennedy submitted a brief on behalf of amicus curiae Justin Rosander, Forensic Video Analyst (Baldassare & Mara, attorneys; Charles Kennedy and Michael Baldassare, on the brief).

Jeffrey Farmer submitted a brief on behalf of amici curiae Dr. Eugene Caruso, Ph.D., Dr. Zachary Burns, Ph.D., Dr. Benjamin Converse, Ph.D., Dr. Reid Hastie, Ph.D., Dr. Emily Balcetis, Ph.D., Professor Neal Feigenson, and Dr. Yael Granot, Ph.D. (Mazraani & Liguori, and Cohen & Gresser, attorneys; Jeffrey Farmer, Alexandra Wald, Elizabeth Bernhardt, and Shannon Daugherty (Cohen & Gresser) of the New York bar, admitted pro hac vice, and Sri Kuehnlenz (Cohen & Gresser) of the New York and California bars, admitted pro hac vice, on the brief).

2

We affirm the Appellate Division's judgment substantially for the reasons expressed in the Honorable Jack M. Sabatino's comprehensive opinion, State v. Fuquan K. Knight, 477 N.J. Super. 400 (App. Div. 2023).  In doing so, we concur with the Appellate Division's guidance and list of non-exclusive factors for trial courts to consider in "dealing with the admission of surveillance videos and with requests by deliberating juries to replay surveillance video evidence, and to do so at modified speeds or with intermittent pauses."  Id. at 425-26.  We also agree with the opinion's recommendation that the Model Criminal Jury Charge Committee consider a model charge regarding jury requests to replay video evidence.  Id. at 426.  We add the following comments.

In this case, the jury requested and watched the short video at issue in slow motion during deliberations.  The video, taken by a security camera with a vantage point from inside a deli, is of the back interior of the deli and its back door.  From that perspective, the only view to the outside was through a relatively small half window in the back door, which was further obstructed by a sign on the window.  The pertinent portion of the video was approximately six seconds in length and showed four men (defendants, their co-defendant,

3

and the victim) walk by outside, behind the deli where the alleged robbery occurred. As a result, the brief images of defendants appear solely through the half window in the deli's back door. In the six-second video, the time it took the men to walk by the window occupied approximately two seconds. So not only was the action taking place in the video somewhat obstructed, but the video was also "very short" and the "rapid activity in the six-second segment [was] not easy to follow at normal speed," as the Appellate Division aptly described. Id. at 424.

Watching a video in slow motion is a commonplace method of playing a video that is not beyond the ken of an average juror. Pushing a button to play a video at a speed slower than normal to assist the jury in viewing the difficult-to-perceive recording here was not an alteration or distortion of the video. It was the same exact video -- simply played in slow motion.[1]

This Court said as much in State v. Watson, 254 N.J. 558 (2023). In contrasting the presentation of evidence in which elaborate forensic video techniques are used, we stated that "[s]pecialized knowledge would not ordinarily be required for other types of adjustments, like adjusting the speed of a video or creating a straightforward composite video, a screenshot, or an

---

[1] Indeed, at the trial level, defendants did not argue that slowing down the short clip in any way distorted the images.

4

enlarged photo from a video." Id. at 606. The issue in Watson involved the bounds of proper video narration testimony by law enforcement witnesses, so the focus of the Court's analysis was on lay and expert testimony. Id. at 591-608. The principles regarding the attributes of video evidence described in Watson are nevertheless relevant here and remain the same: playing a video at a slower speed is a basic action that does not change or alter the admitted video evidence.

Our decision in Boland v. Dolan, 140 N.J. 174 (1995), is instructive. There, in opposing the plaintiff's slip-and-fall claim, the defendants entered a photograph into evidence that showed the bottoms of the plaintiff's shoes. Id. at 178. The defendants argued that the soles of plaintiff's shoes were worn and therefore caused the plaintiff's fall. Ibid. Despite requests from the defendants, the trial judge did not allow the jury to view the picture with a magnifying glass during trial. Id. at 178, 180. After the jury requested a magnifying glass during deliberations, the plaintiff objected. Id. at 180. Plaintiff argued that magnification amounted to changing the evidence and that he had not had an opportunity to review the magnified photograph previously. Ibid. The judge overruled the objection, noting that "[t]his is simply a tool for them to look at the photographs . . . it's not a distortion or changing the photograph." Id. at 180-81. The judge thus sent the jury a conventional

5

magnifying glass. Ibid. The jury ultimately found for the defendants. Id. at 181. The Appellate Division, however, reversed on appeal because it doubted the jury's ability to evaluate the shoes' slip resistance based on a magnified image of the soles without testimony from an expert witness. Ibid.

This Court granted certification and reversed. Id. at 180, 190. First, we agreed with other jurisdictions and prior New Jersey case law that a magnifying glass was not new evidence, but merely a commonplace tool familiar to the jury. Id. at 181-85, 188. We also differentiated between resources that supplement evidence by impermissibly adding meaning to properly admitted evidence and resources, like a magnifying glass, that aid understanding by "highlight[ing] or illustrat[ing] evidence properly admitted or testimony of witnesses properly allowed during the trial." Id. at 185-87. Specifically, we distinguished the use of the magnifying glass in Boland from the discovery -- by the jury during deliberations -- of new (and thus not properly admitted) evidence in State v. Anderson, 251 N.J. Super. 327, 332 (App. Div. 1991), and from the impermissible use of a dictionary during deliberations in Palestroni v. Jacobs, 10 N.J. Super. 266, 271 (App. Div. 1950). See Boland, 140 N.J. at 185-87.

Second, we did not require expert testimony before the magnifying glass could be utilized and found that for "an instrument of 'common knowledge,'

6

like an ordinary magnifying glass," such testimony is usually not needed. Id. at 189. We observed that the Appellate Division erred by focusing on the lack of expert testimony and found that "[t]he focus should first be whether such testimony is needed or whether common knowledge suffices for use of the instrument in issue." Ibid.

Here, playing in slow motion the same video that was properly admitted into evidence to highlight the action occurring onscreen and assist the jury is generally no different from allowing the jury in Boland to use a magnifying glass to meticulously inspect a picture. The relevant portion of the video at issue in this case was fleeting and difficult to perceive. Slowing the video down, a familiar adjustment in video playback, did not change or distort the evidence but simply aided the jury's examination of what took place in the video by playing it at an easily discernable pace.[2]

But some tools or functions may be so specialized that their usage constitutes an alteration of evidence, or the creation of new evidence. If a party intends to play a video with something beyond the "basic techniques" noted in Watson, that party must come forward and alert the trial court and

---

[2] The concerns raised in the study cited by defendants, see Eugene M. Caruso et al., Slow Motion Increases Perceived Intent, 113 Proc. Nat'l Acad. Scis. 9250 (2016), would need to be tested under the standard articulated in State v. Olenowski, 253 N.J. 133 (2023).

opposing counsel to any modifications or alterations made to the evidence. In those situations, a qualified expert may need to testify about the modifications consistent with N.J.R.E. 702. Watson, 254 N.J. at 606 (explaining that an expert would be required to testify about how they "enhance[d] the quality of an electronic or video recording," or used "more elaborate forensic techniques . . . like 'pixel tracking'").

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in this opinion.